FLANAGAN vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

RAILROAD COMPANIES: *(1) When not chargeable with negligence.*
NEW TRIAL: *(2) When properly granted for inaccurate instructions.*
APPEAL TO SUPREME COURT. *(3) What reviewable on appeal from order.*

1. A railroad company is not chargeable with negligence merely because it delays, for any length of time, to repair a broken car while it remains unused and not so situated as to create danger; nor merely because it moves such car to its shops for repairs, and does not make such repairs at the place where the car was injured; nor merely because it puts such car in a train with others in order to take it to the repair shops.

2. Where there are inaccuracies in the instructions given, which may have misled the jury notwithstanding more accurate instructions given at the same time, there is no error in granting a new trial.

3. On appeal from an order, no other order can be reviewed; though an appeal from a judgment brings up for review any intermediate order involving the merits and necessarily affecting the judgment (Laws of 1860, ch. 264, sec. 6), as one overruling a demurrer to the complaint.

APPEAL from the Circuit Court for *Outagamie* County.

Separate appeals from two orders made after verdict for the plaintiff, viz: an order granting a new trial on defendant's motion, and an order denying plaintiff's motion for judgment pursuant to the verdict.

The action was to recover damages for injuries received by plaintiff when in defendant's service, at Escanaba, in the state of Michigan, in the year 1872. It appears from the complaint and evidence, that plaintiff was employed as a brakeman in defendant's depot yard and grounds at that place, under one O'Brien, who is called a conductor, and from whom plaintiff received orders. Escanaba is a shipping point for ores brought there from other points on defendant's railway; and it was the duty of O'Brien and the plaintiff to take charge of and handle, at that point, the cars and trains which came there.

A few days before plaintiff was injured, they backed a train of cars loaded with ore upon a side or spur track, and, in so doing, ran the rear car off the end of the spur track, breaking what are called the "jaw braces." These "jaw braces" are pieces of timber, two or three inches square and about eight feet in length, placed under the oil boxes outside of the wheels on either side, each extending from near the center of the forward wheel to the back wheel of the car on the same side. They support the oil boxes, and upon them the brakeman places his foot when getting upon the car in motion.

On the day the plaintiff was injured, this train, except the two rear cars, was taken by O'Brien and the plaintiff from the spur track, and run upon another side track, called the "stockdock" track, where the cars were unloaded. In the meantime, and on the same day, the broken car was unloaded and placed

on the track, and O'Brien ran an engine down the spur track (the plaintiff remaining at the switch connecting the "stock-dock" with the main side track), drew out the two cars left there, ran up the main track, backed down on the "stock-dock" track, and attached the engine and two cars to the balance of the train. Plaintiff went on the train as it passed the switch going on the latter track, and remained thereon until, as it moved from that track, it again passed the switch. By order of O'Brien, he then left the train and set the switch so that the train could be backed down the main side track, which led to the yard or shops of the defendant where engines and cars of the defendant were usually inspected, and, if necessary, repaired. This train was being taken there for those purposes.

As the train passed the switch, backing down to the repair yard or shops, the plaintiff attempted to go upon the broken car (which was the second from the engine), and, seizing a brace on the outside of the car, he attempted to place his foot on the jaw brace in the usual manner, not knowing that it was broken off; but, no jaw brace being there, he was thrown by the motion of the train partly under the car, with one leg across the rail, and the wheels of the cars passed over his leg, crushing it so that it was necessary to amputate it. This is the injury complained of.

It is unnecessary to state more specifically the contents of the complaint, because this court holds that it is *res adjudicata* on these appeals that it states a cause of action; a demurrer thereto on the alleged ground that it does not, having been overruled, and no appeal having been taken from such ruling. The answer is a general denial, except that defendant's corporate character is admitted.

On the trial, the circuit judge charged the jury (among other things) as follows:

"If any one of their cars became so broken or out of repair as to make it dangerous for their brakemen to get upon it, it was their duty to repair the broken car, if they intended to use it on their road, as soon as practicable after discovering the break or other defect.

" And if the car in question here was broken, and the defendant knew it, or might with reasonable diligence have known it, in time to have repaired it before the accident occurred; and if the defendant used or moved the broken car on its road, where the plaintiff was required, in the line of his duty, to get upon the train containing the broken car, — then, if the plaintiff did not know, when he attempted to get upon the car, that it was broken, or could not then, with the use of ordinary care, have noticed that it was broken and unsafe to get upon, the defendant was guilty of negligence in suffering the broken car to be moved in that train, of which the plaintiff, if he was injured in consequence thereof, has a right to complain."

Several questions of fact were submitted specially to the jury, some of which, with the answers of the jury thereto, were as follows:

" Q. 11. Did the defendant, at the time and place mentioned in the complaint (viz., on the 31st day of August, 1872, at Escanaba, Michigan), and while the plaintiff was employed in the line of his duty and service as brakeman, carelessly and negligently use an unsafe and defective ore car in an ore train, upon which the plaintiff was employed as brakeman for the defendant? A. Yes.

" Q. 12. If you answer the last preceding question in the affirmative, state whether or not the jaw brace on said car was broken off, and whether the car was thereby rendered unsafe for a brakeman to get upon? A. It was.

" Q. 13. Did the defendant, with notice or knowledge that said jaw brace was broken off, carelessly and negligently move the ore train with said broken car from the dock to the yard mentioned in the complaint? A. Yes.

" Q. 17. Was it by reason of the carelessness and negligence of the defendant, its servants and agents, in moving said train and car with the broken jaw brace, that the plaintiff, while attempting to get upon said car, was thrown upon the track and injured in the manner stated in the complaint? A. Yes.

" Q. 19. How did the jaw brace of the car upon which the

plaintiff attempted to get when he got hurt, get broken? A. By having been run over a log placed at the end of the spur track.

" Q. 21. Did the defendant or its servants use the car after it was broken, for any purpose except to draw it upon the track from the place where it was broken, to or towards the repair yard? A. If they did not use it, they evidently intended to do so.

" Q. 30. Did the servants of the defendant use ordinary care in getting the car with the broken jaw brace upon the track, and in moving such car on its way to the repair yards? If you answer that they did not use ordinary care, state in what respect they did not use ordinary care? A. This question is divided into two parts. Answer to first: No. Answer to second part: By attaching said car with the broken jaw brace to the train standing at the time at the stock dock.

" Q. 31. Was the defendant, or any of its servants, negligent with regard to this car with the broken jaw brace? If so, in what manner or respect was the defendant or its servants negligent? In what did such negligence consist, and what servant or servants were guilty of negligence? A. This question is divided into three parts. Answer to first part: Yes. Answer to second part: By not placing a bumper at the end of the spur track, and by attaching the car with the broken jaw braces to a train of cars, without being first repaired. Answer to third part: Wm. O'Brien, the conductor.

" Q. 32. If you answer that the defendant or any of its servants was negligent with regard to this car with the broken jaw brace, how, or in what way or manner, did such negligence contribute to or cause the injury to the plaintiff? A. In attaching it, unrepaired, to a train of cars on which the plaintiff was then working and in the line of his duty.

".Q. 42. Was it, under the circumstances as shown by the evidence, negligence on the part of the defendant to move the car with the broken jaw brace? A. Yes."

The jury assessed the plaintiff's damages at ten thousand dollars.

The court made an order granting a motion by defendant for a new trial, and a separate order denying plaintiff's motion for judgment pursuant to the verdict; and plaintiff took separate appeals from these orders.

*E. P. Smith*, for the appellant.

*Charles W. Felker*, for the respondent.

LYON, J.   The learned counsel on both sides have indulged in a wide range of argument, and have discussed questions which can properly be determined only on an appeal from a final judgment.   On such an appeal we may review any intermediate order involving the merits and necessarily affecting the judgment (Laws of 1860, ch. 264, sec. 6), and hence may review an order overruling a demurrer to the complaint. *Armstrong v. Gibson*, 31 Wis., 61; *Tronson v. Union Lumbering Co.*, 38 id., 202.   But on an appeal from an order, the statute does not confer upon this court the power to review another order in the cause.   On these appeals, therefore, we cannot review the order of the circuit court overruling the demurrer to the complaint.   That court thereby determined that the complaint states a cause of action, and the order was not appealed.   Hence, until an appeal is taken from a final judgment in the action, it is *res adjudicata* in this court that the complaint states facts constituting a cause of action.

.The question to be determined on these appeals is, Does the record show any sufficient grounds for granting a new trial? The circuit court granted a new trial for the reasons (as stated in the bill of exceptions) that it erred in the instructions given to the jury, and also in refusing instructions asked on behalf of the defendant; and that the jury evasively answered certain questions of fact submitted to them.   If any of these alleged errors were committed on the trial in respect to any matter material to the issue, and to the injury or prejudice of the defendant, a new trial was properly granted.

It is too clear for controversy, that it was not negligence on the part of the defendant to suffer the broken car to remain at the end of the spur track where it was broken, unrepaired, as

long as it chose. It is immaterial in this action whether it was suffered to remain there in that condition a day or a year. Negligence cannot be predicated of the delay, however protracted, to remove or repair it. It is equally clear that the defendant was not bound to repair the car before removing it from the spur track. It had the undoubted right to remove it to its yard or shop where such work is usually done, and there repair it. Neither was it necessarily negligence for the defendant to put it in a train with other cars in order to take it to the repair yard or shops.

The jury were instructed, in substance, that if the defendant knew, or might have known had it exercised reasonable diligence, that the car was broken, in time to have repaired it before the plaintiff was injured, and moved it on its road in its broken condition, such delay and removal constituted negligence on its part; and further, that if the car was so broken as to render it dangerous for the brakemen to go upon it, it was the duty of the defendant to repair it as soon as practicable after it had knowledge that the car was broken. The jury found specially that, under the circumstances, the defendant was guilty of negligence in that the broken car was attached to a train of cars and moved on the track, before it was repaired. These findings are supported by the instructions.

Moreover, the learned circuit judge instructed the jury that "it was undoubtedly the duty of the defendant towards the plaintiff, while he was in their employ as one of their brakemen, to keep their cars in a suitable and safe condition, so that the plaintiff, while performing his duty as brakeman, could safely get on and off the cars." This instruction is too broad. Cars and engines are frequently damaged, and it becomes necessary to remove them to some proper place for repairs; and it may happen that they are so seriously damaged that their removal will be attended with some personal danger to those engaged in the work. Yet that is one of the perils of the business; and if a person so employed is injured because of the broken or unsafe condition of the car or engine, he has no remedy against the owner, unless such owner has been other

wise negligent.   It may be that the inaccuracy of this instruction is corrected in other portions of the charge; yet the judge may have thought, when he granted the new trial, that it might have misled the jury.

The injury complained of was received in the state of Michigan in 1872, and the action is governed by the common law. There was considerable debate on the argument, as to whether the plaintiff and O'Brien were fellow-servants within the common-law rule which prohibits a recovery against a master for an injury received by a servant in the course of his employment, when the injury was caused by the negligence of a fellow-servant in the same employment.   But this question, and many others discussed in the arguments of counsel, can be determined more satisfactorily on appeal from final judgment in the action, should such an appeal be taken.

Some of the answers returned by the jury to questions submitted to them are evasive and insufficient.   But we shall not stop to inquire whether the defendant could have been prejudiced thereby.   That irregularity can easily be avoided on another trial.

Sufficient has been said to show that a new trial was properly granted.   Both of the orders appealed from must, therefore, be affirmed.

Pursuant to a stipulation on file, signed by the respective counsel, no costs except actual disbursements will be taxed on the affirmance of the order denying the plaintiff's motion for judgment.

