AUSTIN WATSON v. THE H. & T. C. R'Y Co!

(Case No. 990.)

1. RAILWAY COMPANY.— One accepting employment from a railway company to assist in operating trains is bound by an established usage or custom of the company in regard to the duties required of him. If the usage in a particular case imposes on him a duty extra hazardous, and in its performance he sustains injury, the burden is on him to show that the existence of the established usage had been concealed from him by the company.

2. RAILWAY COMPANY — REMOVING DAMAGED CARS.— The duty of removing damaged cars to the repairing shops of a railway company may be imposed on any employee who will assume the risk. If a brakeman accepts service from a company whose usage and custom it is to require of its brakemen to couple defective or broken cars, so that they may be removed for repairs, he will be held to have assumed the risk incident to such employment.

3. CHARGE OF COURT.— A charge of the court which in effect assumed as matter of law that the placing of a car on a side track, or marking on it "out of order," was sufficient to charge an ordinary man engaged in coupling it with notice of its damaged condition and the consequent extra risk of coupling it, *held* error.

4. USAGE.— A brakeman on a railway, injured by coupling a damaged car, cannot secure exemption from the consequences of a custom which required the car to be marked "out of order," which was done in the particular case, by showing his inability to read.

APPEAL from Harris. Tried below before the Hon. James Masterson.

For a full and complete statement of the case, that contained in appellee's brief is adopted.

On the 15th of June, 1876, appellant filed his original petition against the appellee, alleging that on the 1st of March, 1876, while in the service of appellee as a brakeman, in the discharge of his duty as such, in endeavoring to couple cars belonging to a freight train, his right hand was caught between the cars and so injured as to necessitate the loss of two of his fingers; that his injuries were caused by a defective drawhead of one of the cars to which he attempted to make the coupling; that he was ignorant of the condition of the drawhead, and that appellee knew of its condition and had negligently failed to repair the same. He alleged his damages to be $11,500.

Appellee answered that it was not guilty, and denying the allegations in plaintiff's petition; and by special plea that appellant was injured by his own carelessness and want of proper care and attention in the performance of his duty as brakeman, which was the proximate cause of his injuries; that appellant's injuries were received while he was in the performance of his duty as brakeman on one of appellee's trains, in attempting to couple into the train an empty

car, for the purpose of taking to appellee's shop at Houston to be repaired; that said car was out of repair at the time and had been out of repair for some time next prior thereto, and was not then in use in appellee's business, and because of its bad condition had been set aside on a side track until it could be taken to the shop to be repaired; that it was standing on the side track at the time, and was marked on the side of it " out of order," as notice to all persons in appellee's employ of its unworthy condition, and that it was not then in use nor in proper condition for use; that all this was known to appellant, or ought have been known to him by the use of ordinary diligence and observation, which diligence and observation he should have exercised in the proper discharge of his duty as brakeman; that when its cars were out of order from wear and tear or from accident, it was its duty to have them repaired and put in good condition; that its shop for that purpose was at Houston, and that the car complained of was being coupled into the train at the time of the injuries complained of, for the purpose of being taken to its shops at Houston to be repaired, and that it was part of appellant's duty as brakeman to couple it into the train in its then condition for that purpose, and if he was injured thereby, his injuries were caused by a peril to which he knew he would be, and frequently was, exposed from the nature and character of his employment as brakeman, and which he had to incur necessarily in the performance of the duty of his employment, and which peril is necessarily incident to his employment.

To the answer of appellee, appellant filed replication, alleging that when he was injured it was dark, and he could not see that the car was out of repair and was marked as charged by appellee; that he was unable to read, and could not have read the words "out of repair" if it had not been dark; that he was ordered to make said coupling by the order of the conductor of his train, whose order he was bound to obey, and that he was not informed that the car was out of repair, and was ignorant that the same was being coupled to be taken to the shop for repairs, but supposed that nothing was the matter with it, and never knew it until after he was hurt.

To this replication appellee answered that it was appellant's fault and carelessness in that he did not prepare himself at the time with a lamp in such condition as to enable him to see how to couple the cars; and that appellee had furnished him with good lamps and oil for that purpose, and they were in his care and keeping, and he, as a prudent man, should have had one in good condition so as to en-

able him to see how to couple said cars; and to so much of said replication as alleged that appellant could not read, appellee excepted specially, and asked the court to strike it out.

Upon these pleadings the case was tried before a jury; verdict and judgment for defendant. Motion for new trial overruled, and notice of appeal.

Appellant had been in employ of appellee as brakeman for six or seven years before March 1, 1876, when he was injured while coupling an empty car into a train in the yard at Hempstead, by the order of the conductor. The car had a defective drawhead, and was marked " out of repair," and was on the side track; appellee was ignorant of its condition, and the accident occurred by reason of the defective drawhead.

The train on which appellant was employed was a freight train. It was dark, and appellant used a lamp. When cars became out of repair, it was customary to send them to the shops at Houston for repair, if the injuries were such as could not be remedied on the line of the road; it is marked " out of order " on the side of the car, and placed on the side track to be taken to Houston to be repaired, by a freight train. It is the duty of the brakemen to make the coupling. Its condition would be disclosed to the brakemen by the marks on the side of the car. When a conductor arrives at a station the agent gives him a list of cars at his station to be taken in his train, and he orders the brakemen to make the couplings.

*Likens & Stewart*, for appellant.

I. That it is the duty of a railroad company to furnish its employees with good and safe machinery and appliances and to attend to it that they are kept in sound and reliable condition.

II. That the employee has the right to presume, not having been duly notified to the contrary, that the machinery and appliances with which he has to deal in the line of his employment are of such character and in such condition.

III. That, presuming that such machinery and appliances have been furnished and in such condition, if the employee, in the discharge of a duty incident to his employment, receives injury by reason of their defective condition, the employer becomes liable. Redfield's Law of Railways, vol. 1, p. 518, sec. 2, 4th ed.; Wharton on Negligence, pp. 206–224; Snow *v.* Housatonic R. R., 8 Allen (Mass.), 441; Ford *v.* Fitchburg R. R., 110 Mass., 260; Nashville R. R. *v.* Elliot, 1 Cold. (Tenn.), 611; Gilman *v.* E. R. R., 10 Allen (Mass.), 233; Gilman *v.* E. R. R., 13 Allen (Mass.), 433; Greenleaf

*v.* Ill. Cent. R. R., 29 Iowa, 36–49; Greenleaf *v.* D. & S. R. R., 33 Iowa, 52; Flike *v.* The B. & A. R. R., 53 N. Y., 549; Faulkner *v.* E. R. R. Co., 49 Barb. (N. Y.), 327.

*Baker & Botts,* for appellee.

I. We maintain the charge of the court was a correct statement of the law, and applicable to the facts given in evidence, and submit the following propositions:

1st. That an employee who contracts for the performance of hazardous duties assumes such risks as are incident to their discharge.

2d. That it is to be assumed that a servant voluntarily enters into the employment of his master, and if he is injured, it is necessary for him to prove, before he can recover, that the risk by which he was injured was not of those which he agreed to assume. If he rests his case after showing that he was injured by an ordinary accident of his service, of which he was aware, or ought to have been aware, when he entered into it, he cannot recover.

In support of this proposition we refer to Wharton on Negligence, secs. 214, 219; Wood's Master and Servant, sec. 326; Indianapolis R. R. Co. *v.* Flanagan, 77 Ill., 365; Patterson *v.* Pittsburg R. R. Co., 76 Pa. St., 389; Nashville R. R. Co. *v.* Elliot, 1 Cold. (Tenn.), 612; Strahlendorf *v.* Rosendahl, 30 Wis., 674; Noyes *v.* Smith, 28 Vt., 59; Greenleaf *v.* Ill. Cent. R. R. Co., 29 Iowa, 14; Vicksburg & Meridian R. R. Co. *v.* Wilkins, 47 Miss., 404; De Witt *v.* Pacific R. R. Co., 50 Mo., 302; Fifield *v.* R. R. Co., 42 N. H., 240; Lansing *v.* N. Y. Cent. R. R. Co., 49 N. Y., 534; Wright *v.* R. R. Co., 25 N. Y., 562; Moss *v.* Johnson, 22 Ill., 642.

II. When a railroad company is in the habit of taking damaged cars from one station to another for repairs, and a person is employed to couple and switch such cars, and while so engaged he is injured in attempting to couple a car to the train, by reason of the broken condition of the car, it is a presumption that he undertook the employment subject to all of the risks incident to the place, and that this was one of the risks he expected to incur when he accepted the employment.

III. While it is the duty of a railroad company to furnish a safe road and safe machinery, and on failing to do so it becomes liable for injury to an employee therefrom, if he is ignorant of the defects, and therefore not contracting with reference to them, that the rule does not apply when the employment is for the purpose of assisting in joining machinery that is defective, and the employee is injured

when a defective car is on the way to the proper shops for repairs, and the existence of the defect implied no negligence on the part of the road.

In support of the last two propositions we refer the court to the case of Chicago & Northwestern Railroad Company v. Dennis Ward, 61 Ill., 131, to which we respectfully invite the attention of the court. We also refer the court to the case of Flanagan v. C. & N. W. R. R., 45 Wis., 98.

WATTS, J. COM. APP.— Among other things, the court instructed the jury that "If the proof shows that plaintiff was a brakeman, and as such it was his duty to couple any and all cars, damaged or sound, then if he, in attending to his duty, received an injury, he cannot recover, unless defendant did not do what was usual and proper in placing the car on the side track or by chalking on the car 'out of order,' or in some other manner reasonably calculated to put an ordinary man on notice." This charge is objected to as being upon the weight of evidence, and misleading.

If, as claimed, it was the usage or custom of the company, when a car had been disabled or had otherwise become unfit for use, that it was chalked "out of order," and placed upon a side track for the purpose of being removed to the shops for repairs, and that when so chalked and placed upon the side track it was part of the duty of the employees operating trains upon the line to couple the same in the trains and remove them to the shops, then any person accepting employment to assist in operating trains upon the company's line would do so subject to such usage or custom, unless it should be made to appear that the company had concealed the existence of such usage or custom from the employee. The burden is upon the company to establish the existence of such usage or custom, but when it is established, if the employee seeks to avoid its force and effect, the burden is upon him to show that its existence has been concealed from him by the company.

For general use the company must furnish its employees with sound, complete and suitable cars, with all the usual and necessary attachments; but it is well known to all that the most complete and perfect car that can be contrived by the ingenuity of man is liable to become unfit for use, either by accident or the nature of the business in which it is used, at points on the line where there are no facilities for making repairs, so that its removal to the shops of the company for that purpose becomes indispensable. Therefore some employee must engage in handling and removing them. This duty

may be imposed upon any class of employees who are willing to assume the risks incident to the employment; and it is immaterial whether this is the entire scope of the employment or merely incidental to the main employment, the same result would follow. If the appellant accepted service as a brakeman, and by the usage or custom of the company it was a part of his duty to couple these defective or broken cars to the train, so that the same could be carried to the shops for repairs, then he will be held to have assumed the risks incident to that particular employment. Flanagan v. C. & N. W. R. R., 45 Wis., 98.

And as to the notice of the defective character of the car, if the usage of the company, in giving notice of such defect, consisted in chalking upon the car the words " out of order," and placing them upon a side track for removal, then it will be held that appellant engaged in the service subject to such usage or custom, and if the notice in this case was given in the usual and customary manner, then it was sufficient. His incapacity to read the notice would not affect the result. He could only secure exemption from such usage or custom by contracting against it; for his incapacity to understand the nature and extent of the business he engages to perform is not chargeable to the fault of the company.

It is immaterial whether such incapacity arises from a want of sufficient education to read and understand the purport of the usual " out of order," or from want of skill in the performance of other duties appertaining to the employment.

However, there is an error in the latter part of the charge, wherein the court assumes that either the placing of the car on the side track or by chalking on it " out of order " would be sufficient "to put an ordinary man on notice." Doubtless the use of the disjunctive " or " instead of the conjunctive " and " was an inadvertence and not intended by the court. This, however, would not render the charge less objectionable nor less injurious to appellant.

It is not pretended that the mere placing the car upon the side track was ever considered as or intended to constitute notice of any defect in it whatsoever. All classes and kinds of cars are left standing upon side tracks, and no usage or custom is shown to exist whereby, from that fact alone, any presumption would arise as to such cars being out of repair. All that is claimed by appellee is, that, by placing a car on the side track chalked " out of order," notice is thereby given to its employees that the car is defective and not for general use.

When considered in connection with the evidence this error be-

comes material. The only evidence in the record as to this particular car being chalked "out of order" is found in the testimony of the witness William Starks, who, after giving a detailed account of the accident and his own success in coupling the car to the train, says: "I afterwards noticed on the car, marked on the side, 'out of order.'" When he observed that the car was thus chalked is not made to appear. It might have been immediately after the accident or at some subsequent time. If the car was not so chalked at and before the injury, it will not be contended that the fact that it was standing on the side track would be any notice whatever of its defective condition.

We conclude that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion approved January 29, 1883.]