I. & G. N. R'y Co. v. Manly L. Hester.

(Case No. 5299.)

1. NEGLIGENCE — RAILWAYS — SECTION HAND.— A person accepting employment as a section hand assumes the risks ordinarily incident to such employment, and the railway company is not liable to him for injuries resulting from such assumed risks; but it is liable for injuries occasioned by superadded risk, resulting from the negligence of the company or its immediate representative, provided the injured party does not contribute to the injury by a failure to exercise such reasonable care as the occasion demands. (Following Wall v. T. & P. R'y Co., 4 Tex. L. Rev., 36; T. & P. R'y Co. v. Burns, 4 Tex. L. Rev., 54.) A section hand also assumes that he has the capacity to understand the nature and extent of the service, and the requisite ability to perform it. Following Watson v. H. & T. C. R'y Co., 58 Tex., 439.

2. FACT CASE — NEGLIGENCE.— See opinion for facts held not to constitute negligence on the part of the railway authorities.

3. SAME.— A company or its agents cannot be charged with negligence for sending a section gang out to work on its road on a foggy day. Though the state of the weather might add to the ordinary risk, still the service contracted to be performed was of such nature and importance as to embrace within its scope dark and cloudy as well as clear weather. If the injured party desired exemption from danger incident to changes in the weather, he should have contracted for it on entering the service. Following Watson v. H. & T. C. R'y Co., 58 Tex., 434.

APPEAL from Travis.   Tried below before the Hon. A. S. Walker.

Appellee brought this suit to recover damages for injuries received while in its employment as a section hand, and claimed to have been caused by the negligence of Wilson, the section boss, who it is claimed had full power to employ and discharge the servants under him.

Appellant answered by general and special exceptions, general denial, and specially that appellee and Wilson were fellow-servants and therefore no recovery could be had on account of Wilson's negligence.   Also that the injuries resulted from appellee's want of ordinary care and diligence.

The cause was tried November 25, 1884, and resulted in a verdict and judgment for appellee in the sum of $2,000, from which this appeal was taken and perfected.

*Maxey & Fisher,* for appellant, cited: Chandler *v.* Meckling, 22 Tex., 42; H. & T. C. R'y Co. *v.* Schmidt, 61 Tex., 285, 286; Jacobs, Bernheim & Co. *v.* Crum, 4 Tex. L. Rev., 321; Hathaway *v.* Mich. Cent. R. R., 51 Mich., 257; I. & G. N. R. R. Co. *v.* Roth, 4 Tex. L. Rev., 4–8; T. & P. R'y Co. *v.* Burns, id., 57, 58; Texas M. R. Co. *v.* Whitmore, 58 Tex., 288–9; Mo. Pac. R'y Co. *v.* Lyde, 57 Tex., 505; Railway *v.* Oram, 49 Tex., 346; Cooley on Torts, 556–8.

*Smith & Trigg,* for appellee, cited: Anderson *v.* Anderson, 23 Tex., 639; Robinson *v.* Davenport, 40 Tex., 333; Howard *v.* Ray, 25 Tex., 88; Briscoe *v.* Bronaugh, 1 Tex., 326; Latham *v.* Selkirk, 11 Tex., 314; Wall *v.* T. & P. R'y Co., 4 Tex. L. Rev., 38; G., H. & S. A. R'y Co. *v.* Sullivan, 5 Tex. L. Rev., 185; C. H. M. & St. P. R. R. Co. *v.* Ross, Tex. L. Rev., vol. 3, No. 10, 628; Railroad Co. *v.* Fort, 17 Wall., 553; Chicago & N. Y. Railway *v.* Bayfield, 37 Mich., 207; Cook *v.* Han. & St. Jo. R'y Co., 63 Mo., 398; Nashville & Chat. R. R. Co. *v.* Carroll, 6 Heisk. (Tenn.), 348; Lalor *v.* Chicago R. R., 52 Ill., 40; Duval, Ky. Reports, vol. 2, 114; Cooley on Torts, pp. 553, 554, 555, 556.

WATTS, J. COM. APP.— But one question presented by the assignment of errors will be considered in the disposition of this appeal, and that is presented by the sixth assignment of error, which is as follows:

" VI. The verdict of the jury was against and contrary to the law and evidence, and was wholly without evidence to authorize or support it: 1. Because the testimony for the plaintiff (including his own evidence) and that for defendant alike affirmatively prove that Wilson was not only not negligent upon the occasion of the accident to plaintiff, but that, at the time of and prior to the collision, he was in the exercise of the greatest care, and throughout did all that a careful and prudent man could do to prevent the accident and protect his men from hurt. 2. Because said testimony further proved that the hurts received by plaintiff, if not the result of inevitable accident, resulted directly and proximately from his own want of ordinary care, in failing, with ample time before him, to remove himself from the path of a known and apparent danger to a place of safety."

It may be assumed that Wilson was the representative of the company, and for whose negligence it would be responsible; and also that, if the injury to appellee was occasioned by Wilson's negligence, that then the verdict and judgment must be considered as sustained by the evidence.

When appellee accepted the employment as section hand, he assumed all the risks ordinarily incident to such employment, and the company would not be liable to him for injuries resulting from such assumed risks. But if the injuries were occasioned by superadded risk resulting from the negligence of the company or its immediate representative, then a liability would exist for which he would be entitled to recover, unless, in some way or other, he contributed to the injury by a failure upon his part to exercise such reasonable care as the occasion required. Wall v. T. & P. R'y Co., 4 Tex. Law Review, 36; T. & P. R'y Co. v. Burns, 4 Tex. Law Review, 54, and authorities cited.

In accepting the employment, appellee not only assumed the risks ordinarily incident to the particular service, but he also assumed that he had the capacity to understand the nature and extent of the service, and the requisite ability to perform it. Watson v. H. & T. C. R'y Co., 58 Tex., 439.

It appears that, while the nature of the service and duties of section gangs require that they should move from point to point along that portion of the line which constitutes the section, in hand-cars, to repair the road-bed and note its condition, that in doing so they are expected and required to keep a watch for passing trains, and to protect themselves from danger from that source. From the evidence it appears that passing trains have the right to the track, and section gangs are required to look out for themselves and to remove from the track their hand-cars so as to allow moving trains to pass without interruption or danger from collision with such hand-cars. As a matter of course, in the performance of these duties by the section hands, they are exposed to more or less danger when on the track by reason of moving trains, but such risks are assumed by them in entering the service and in accepting the employment. And if injury results from such assumed risks, without the risk being aided or increased by the negligence of the company or its superintending agencies, it will be considered an inevitable accident for which no liability can attach to the company.

There is no pretense that the company or its agents can be charged with negligence for having the section gang go out to labor upon the line on that foggy day. While the condition of the weather

might add to the risks ordinarily incident to the performance of the service in clear weather, still the service contracted to be performed was of such nature and importance as to embrace within its scope dark and cloudy as well as clear weather. Had appellee desired exemption from dangers incident to the changes in the weather, he should have contracted for it in entering the service. Watson *v.* H. & T. C. R'y Co., 58 Tex., 434.

It appears from the evidence that Wilson had been directed by his superior to repair a certain portion of the track on his section, the day appellee received the injuries, and that the accident occurred while the gang were on their way to the designated point. The evidence shows that the morning was foggy and dark, and that the accident happened about 8 o'clock, some three or four miles east of Duval, the place from which they started. That they knew the west bound passenger train was behind the schedule time, and that they were likely to meet it at any time. They were moving at the rate of about two miles per hour, halting frequently to look and listen for the expected train. At the point at which the collision occurred the track was straight and level, and it appears that the engineer had the head-light of the engine burning. According to the evidence of appellee, the train when discovered by them was from fifty to one hundred and fifty yards distant, and that they immediately stopped the hand-car, and Wilson directed them to take it from the track; that they had turned it across the track so as to remove it, when he noticed that the engine was so near, that he attempted to get out of the way of danger, but the engine struck the hand-car, throwing it upon that side of the track where he was, striking him with the "jigger-stick" of the hand-car, by which his thigh was broken, and his head and eye were severely injured. It was the admitted duty of the "section gang" to remove the hand-car from the track, if that could be done without unnecessarily exposing themselves to danger. The gist of the complaint seems to be, that Wilson's negligence consists in his failure to order the men to get out of the way and protect themselves, as soon the occasion required him to do so. Upon this point appellee testified that Wilson ordered them to take the car from the track, and that if he afterwards directed them to let the car go, and to get out of the way, then he did not hear the order. He was on the east while the others were on the west side of the track, and that he was confused by the situation. He further states that the other hands told him afterward that Wilson did give the order for the men to get out of the way, and they obeyed the order and escaped injury.

The only other witness who testified to anything with reference to the directions or orders given by Wilson was John Davidson, whose depositions were taken by appellant, but introduced by appellee. He was one of the "section gang," and present at the time. He testified that, when they saw the engine coming, they stopped, and began running the hand-car off the track under Wilson's orders, but that when they had got it only partly off the track, Wilson ordered them to get out of the way and let the hand-car go, and that this order was repeated two or three times by Wilson. He further says that appellee "was short-sighted and partly deaf, and seemed stupid, having to be told two or three times often about his work." This witness also states that "we were all trying to get the hand-car off the track, and when we were ordered to get out of the way, we all, except plaintiff, got off on the west side of the track out of the way. We were equally exposed with plaintiff, but had time to get out of the way after we were ordered to." In another connection he says that, "from the time the engine was first seen by the men on the hand-car, and the collision, the danger was apparent, and it was reckless to stand and try to get the hand-car off, after the order was given to get out of the way."

There is no culpable negligence upon the part of Wilson shown by the evidence; on the contrary, he seems to have discharged his duty faithfully and with due care, considering the situation; while appellee, it appears, had accepted employment in a dangerous service, and one in which he had but little experience, and for which he was unfit.

His injuries were serious and permanent, and the amount awarded as compensation would not be considered excessive, provided the liability of the company had been shown; but as the case is presented by the record, we are of the opinion that the verdict and judgment are not sustained by the evidence, and therefore report for a reversal of the judgment and remanding of the cause.

REVERSED AND REMANDED.

[Opinion adopted June 16, 1885.]