MISSOURI PACIFIC RAILWAY COMPANY v. J. F. CALLBREATH.

(Case No. 2046.)

1. MASTER AND SERVANT—EMPLOYMENT—RISK—As a general principle it is well established that one who accepts employment from another, assumes all ordinary risks incident to such employment, and can not recover for injuries resulting therefrom. (Authorities cited.)

2 SAME—As a general rule it is not the duty of the employer to instruct his employe as to the rules of the service, or warn him of dangers incident thereto, unless information be asked.

3. SAME—This rule is subject to the qualification that when there are hazards incident to an occupation, unknown to the servant, which the master knows or ought to know, it is his duty to warn the servant of them, and on failure to do so he is liable for any injury the servant may sustain in consequence of such neglect; and this rule applies even where the danger or hazard is patent, if through youth, inexperience or other cause, the servant is incompetent to fully understand the nature and extent of the hazard. (Wood on Master and Servant, 714; Railway Company v. Watts, 64 Tex., 568; Walsh v. Peet Valve Co., 110 Mass., 23.)

4. SAME—BRAKEMAN—See opinion for circumstances under which it was negligence in a railway company not to inform an employe of the use of a peculiar kind of machinery by the road, and the danger incident to the use of this machinery in the ordinary way

APPEAL from Anderson. Tried below before the Hon. F. A. Williams.

This action was brought in the district court of Anderson county, Texas, by J. F. Callbreath, appellee, against the Missouri Pacific Railway company, for damages for personal injuries inflicted on him while he was in the employment of the railway company as a servant. The plaintiff claimed in his petition that he was a "helper," whose duty it was to couple and uncouple any and all cars in the railroad yards at Palestine; that a construction car was constructed in a dangerous and unusual manner, of which he was ignorant; that the appellant was aware of his ignorance, but did not inform him of the unusual danger to which he would be subjected in coupling the car, nor did it have any rule or regulation furnishing such notice; that in the usual course of his duties, and in the exercise of reasonable and proper care, he undertook, August 23, 1885, to couple this dangerously constructed car to another, and was caught between it and the other car, and was thereby seriously injured, and damaged in a large amount. The defendant answered as follows:

1. It denied all the allegations in the petition; 2. that, if plaintiff was injured, such injury was caused by his own contributory negligence; 3. that, if he was injured, the injury was caused by the negligence of his fellow servants.

The case was tried on April 28, 1886, and resulted in a verdict and judgment for the plaintiff, J. F. Callbreath, for the sum of $1,200.

*Jno. Young Gooch*, for appellant, on risks assumed by an employe, cited: Railway Company *v.* Watts, 63 Tex., 552; Watson *v.* Railway Company, 58 Tex., 438; Flanagan *v.* Railway Company, 45 Wis., 98.

*W. Q. & F. Reeves*, for appellee, cited: Wood on Master and Servant, 778, sec. 403; Wood's Railway Law, 1488; Railway Company *v.* Watts, 63 Tex., 549; 15 Am. and Eng. Railway Cases, 271, 256; 12 Am. and Eng. Railway Cases, 235; 18 Am. and Eng. Railway Cases, 5; 8 Am. and Eng. Railway Cases, 119; 5 Am. and Eng. Railway Cases, 549; Pierce on Railways, 376; Shearman & Red. on Neg., (3d Ed.) 122; Rorer on Railways, 838.

GAINES, ASSOCIATE JUSTICE.—The appellee, who was plaintiff in the court below, applied to appellant's officers for employment, and in reply to inquiries made of him, represented that he understood the business, having had ten years experience as brakeman on railroads in

the United States and Canada. He was thereupon employed by the company as a brakeman, and served in that capacity on its trains some seven or eight days. He was then, with his consent, put to work as a "helper" or car coupler in defendant's yards in Palestine. After working about three hours in this latter capacity he received the injury complained of. He testified that the injury was caused by the unusual construction of a certain flat car in the yard, used in repairing the road-bed and known as a "construction" car. To the end of this car on each side of the draw-head was attached a piece of wood four inches thick and eight inches wide, extending from the draw-head to the corner of the car. By reason of this peculiarity of construction this car could be coupled from above, or by stooping, beneath these projections, but could not be safely coupled by standing between that and the car to which it was to be attached, which is the usual manner of making a coupling. Appellee testified that he had never seen any other car like this, and did not know of the existence of any such car; that when the injury was received it was stationary and the other car was moving down upon it, that he ran to the moving car and took hold of it, running along and watching the moving car, and as it reached the stationary one turned his eyes upon the link and draw-head to make the coupling, when he was crushed between the two. He testified also (and this was not controverted) that there was not space enough between the cars to admit the body of a man without injury. The general manager of the railroad company testified that the projecting timbers upon the construction cars was a device necessary to the use of a certain patented steam plow, and had been in use some six years upon the Texas & Pacific and the Missouri Pacific railroads, and the leased lines of the latter, and that probably one car in a thousand on appellant's road was of this character. There was no evidence that cars of this unusual construction were used upon any railroad except those named in the testimony of the general manager.

The errors assigned contain the proposition that the accident which happened to appellee was the result of the risk assumed by him in accepting the employment of the company, and call in question the sufficiency of the evidence to support a verdict for appellee on this ground. As a general principle the law is well established, that one who accepts the employment of another assumes all ordinary risks incident to such employment, and cannot recover for injuries resulting therefrom. Railway Company v. Hester, 64 Tex., 401; Railway Company v. Watts, 63 Tex., 549; Watson v. Railway Company, 58 Tex., 434; Wood's Master and Servant, 678. And as a general rule it is not the duty of the employer to instruct him as to the rules of the service

or warn him of the dangers incident thereto, unless information be asked. Railway Company *v.* Watts, 64 Tex., 568.

But this rule is subject to some qualifications. It was held by this court, in the case last cited, that the servant being inexperienced and ignorant of the dangers of the service upon which he was just entering it was the duty of the company to have informed him of these dangers. The law is thus stated by a well known text writer: "Where there are * * * hazards incident to an occupation which the master knows or ought to know, it is his duty to warn the servant of them fully, and failing to do so he is liable to him for any injury that he may sustain in consequence of such neglect, and this rule applies even where the danger or hazard is patent, if through youth, inexperience or other cause, the servant is incompetent to fully understand the nature and extent of the hazard." Wood on Master and Servant, 714.

In Walsh *v.* Peet Valve Co., 110 Mass., 23, the plaintiff was injured in repairing a newly patented machine he had never seen before, and defendants were held liable. The court says: "If they (defendants) knew or ought to have known of the danger, and gave no warning, he (plaintiff) would be entitled to recover."

In the case before us, it appears that the car which caused the injury, was used only in connection with a patented invention, and only upon the lines of two railroad companies, so far as the evidence discloses, and that the proportion of these cars to those of the usual and regular construction was not more than one in a thousand. It further appears, that appellee, though of long experience as a brakeman, had never seen a car like the one in question, and never saw the peculiarity of this until the injury was inflicted. All other cars were capable of being safely coupled by the "helper" standing between them; and this was the usual mode of making the coupling. Under these circumstances, can it be said, that appellee's experience availed him in avoiding the danger in this case? On the contrary, it may be plausibly argued, that the fact of his being accustomed to make the coupling standing between the cars, after the manner usual upon railroads, was calculated rather to put him off his guard as to the peculiar hazard which here presented itself, and that an inexperienced person would have been less likely to have received the injury. He attempted to couple the cars, with his eye upon the one in motion, as prudence would seem to have demanded, and had no reasonable cause to apprehend the danger behind him until it was too late to avoid it.

We think, therefore, it was the duty of appellants to have informed appellee of the use of these construction cars upon their roads, when

he entered their service upon the yards, and of the danger of attempting to couple them in the usual way ; and that their failure to do so, was negligence, and renders them liable for the injury.

We find no error in the judgment and it is affirmed.

                                                        AFFIRMED.

[Opinion delivered October 19, 1886.]