Goltz vs. The Milwaukee, Lake Shore & Western R. Co.

GOLTZ, Respondent, vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY, Appellant.

*December 4, 1889 — March 18, 1890.*

*Master and servant: Defective appliances: Contributory negligence: Special finding construed.*

In an action to recover for personal injuries caused by the breaking of an iron hook supporting the staging upon which the plaintiff stood while at work, and which he had handled two or three times daily for eleven days or more preceding the accident, the jury found that " up to the time the hook was delivered to the plaintiff there was a defect in it that could be observed by the owner of the hook, or parties that used it, if they were exercising ordinary care in using or taking care of it." *Held*, that the legal effect of this finding was that the plaintiff could have observed the defect if he had exercised ordinary care while using it, and hence that he was guilty of contributory negligence defeating a recovery.

APPEAL from the Circuit Court for *Outagamie* County.

Action to recover damages for personal injuries. The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

*Alfred L. Cary*, for the appellant, to the point that the plaintiff in using and taking care of the hook could, with the exercise of ordinary care, have observed and known of the defect which caused it to break, and was therefore chargeable with knowledge of such defect, and assumed all the risks of using the hook in its defective condition, and therefore cannot recover, cited 2 Thomp. Neg. 1008, and cases cited; *Naylor v. C. & N. W. R. Co.* 53 Wis. 661; *Kelley v. C., M. & St. P. R. Co.* id. 74; *Behm v. Armour*, 58 id. 1; *Hobbs v. Stauer*, 62 id. 108; *Dynen v. Leach*, 40 Eng. L. & Eq. 491; *Carbine v. B. & R. R. Co.* 29 Cent. L. J. 10; *Davis v. D. & M. R. Co.* 20 Mich. 105–127; *Ballou v. C., M. & St. P. R. Co.* 54 Wis. 257; *Toledo, W. & W. R. Co. v. Eddy*, 72 Ill. 138; *Camp Point Mfg. Co. v. Ballou*, 71 id. 417–420; *Chicago & A. R. Co. v. Bragonier*, 119 id. 51–59.

Goltz vs. The Milwaukee, Lake Shore & Western R. Co.

For the respondent the cause was submitted on the brief of *Gabe Bouck.* To the point that it was not the duty of plaintiff to inspect the hook before or while using the same, but that he was justified in relying that it was suitable, etc., he cited 2 Thomp. Neg. 980; *Wedgwood v. C. & N. W. R. Co.* 41 Wis. 478, 44 id. 45; *Mulcairns v. Janesville,* 67 id. 33; *Wall v. Highland,* 72 id. 435; *Malone v. Morton,* 84 Mo. 436; *Devlin v. W., St. L. & P. R. Co.* 87 id. 545; *U. S. R. S. Co. v. Wilder,* 116 Ill. 100.

The following opinion was filed January 7, 1890:

ORTON, J.   The facts pertinent to the question upon which this case must be decided are substantially as follows:

In October, 1887, the plaintiff and one Jacob Konrad were employed by the defendant company to paint the ceiling of one of the defendant's shops at Kaukauna, in this state, and worked together, in painting the ceiling, nearly all the time from and including the 17th day of October to the 9th day of November, the time of the accident, and had worked in said business, each, eleven days and a half. The defendant furnished them, as the means or appliances of their work, six large iron hooks, six or seven feet long, made of inch iron. The hooks at the upper end were large enough to go over the beams of the ceiling, and at the lower end were so made as to receive a plank edgewise, two inches thick. These hooks, placed in proper distances, held each end of the plank, and on the plank the platform or staging was laid, on which the painters could safely stand to paint said ceiling. These hooks were made at the blacksmith shops of the company, of wrought iron. The position of the platform was frequently changed by the plaintiff and Konrad, in doing said work. At the time of the accident one of the two-inch planks, about fourteen feet long, was placed in one of the hooks at the outer end,

and at the other end was supported by a bracket against the wall; and while they were standing on the platform, doing their work, the hook broke and let the platform down, and they were both precipitated to the floor below, a distance of about twenty feet, and the plaintiff was seriously injured.

The plaintiff and Konrad had handled these hooks and moved them two or three times daily. In the construction of this particular hook there was evidently left a flaw or crack, which caused it to break at that place. That flaw or crack was observable from the outside, and could have been easily seen by any person whose eyes were directed to that point, without the necessity of any close scrutiny or examination. The crack or flaw where the hook broke was on the back part of the joint, and observable from the outside of it. The plaintiff testified as follows: "We would change these stagings something like two or three times a day or more. Konrad and I did the moving. We would take the planks off, change the hooks, and put them back again. I assisted him in doing it. No one else helped us. I never examined these hooks to see if they were all right or not. I never paid any attention to the hooks, any more than I used them. I had them in my hands every day. I lifted them up on the beams." Konrad testified, on behalf of the plaintiff, as follows: "They showed me the hook right away [after the accident], and I looked at it. I just looked at the iron, at the break. I did not take it in my hand and examine it. It was about a foot or two from me when I looked at it. This flaw that I saw was right in the inside of the iron. It looked to me as though it would show on the outside of the iron. I suppose, if a person examined it before it was broken, the flaw would show on the outside of the iron. I think the flaw would indicate itself, by looking at the hook on the outside." Mr. Daley, another witness for the plaintiff, testified that he examined the hook,

but did not make a very careful examination of it. He said, at the time: " *That* iron has a flaw in it." He testified: " That hook was in bad condition where the break was."   " I could not tell you exactly in which part of the crook, but I know in one corner there was a crack about half an inch in size. It would show on the outside of the hook." The witnesses for the defendant, and most of them skilled workmen in iron, including the blacksmith who made the hooks, testified that there was no crack or flaw or defect that could have been seen on the outside of the hook that broke.

There is this explanation that might be given of this contradictory testimony: It was incumbent upon the defendant to prove that there was no defect or flaw in this hook that was apparent or observable to the mechanic of the defendant who made it, or to other skilled employees of the company who used or examined it. On the other hand, the plaintiff must show the converse of this proposition. But the plaintiff, in doing so, must not go so far as to show a defect observable as well to a person of ordinary prudence and observation or to the plaintiff who used it. If the defect was *latent,* or if there was no defect, the plaintiff could not recover. If the defect was *patent,* then the defendant's negligence is established. But if it was so patent as to be equally observable to ordinary persons, or the plaintiff, with no want of ordinary care, then the plaintiff's negligence is established, and he cannot recover. The learned counsel of the appellant therefore contends — *first,* that there was no defect; and, *second,* that if there was one it was so patent as to be negligence on the part of the plaintiff in not discovering it, or, if he discovered it, in using the defective implement. This is the material issue in the case, and it is quite a narrow and concentrated one, and there is not much latitude either way.

The jury found, in answer to the first, second, third, and seventh questions, that the hook was in a defective condi-

tion when the defendant delivered it to the plaintiff and
when it broke, and that the, plaintiff used it properly, and
that neither he nor his assistant was guilty of any ordi-
nary neglect in the use of the hook that contributed to
the injury.  The jury also found, as a natural sequence of
these other findings, in answer to the fourth question, that
the defendant did not use ordinary care and diligence in
the selection of the iron for this hook, in making it or test-
ing it, and keeping it in repair.  This is a sufficient finding
of the defendant's negligence, and that there was a *patent*
or observable defect in the hook when made and when de-
livered to the plaintiff for his use.  But the jury also found,
in answer to the fifth question, as follows: "Up to the
time the hook was delivered to the plaintiff there was a de-
fect in it that could be observed by the owner of the hook,
or parties that used it, if they were exercising ordinary
care in using or taking care of it."

Both parties moved for judgment on this special verdict,
and judgment was rendered thereon in favor of the plaint-
iff.  The learned counsel of the appellant contends that the
last above special finding of the jury was a sufficient find-
ing that the plaintiff was guilty of a want of ordinary care
that contributed to his injury, in not observing the defect
in the hook, or in using it after his discovery of the defect,
or that such is the legal effect of this finding.  The learned
counsel of the respondent contends that this finding refers
only to the defendant, the owner of the hook, and to par-
ties that used it for the defendant before it was delivered
to the plaintiff, and is a finding of the defendant's negli-
gence.

But the language is too broad and comprehensive for such
a restrictive meaning.  It may embrace the defendant, but
it also embraces the plaintiff and all persons who *used* the
hook.  It is impossible to construe it otherwise.  "Up to
[or at] the time the hook was delivered to the plaintiff,

Goltz vs. The Milwaukee, Lake Shore & Western R. Co.

there was a defect in it that could be observed by parties that used it, if they were exercising ordinary care in using it" (or while using it). The defect, at that time, was such and had been such as to be observable to the plaintiff, or any parties that used it, including the plaintiff, if he or they was or were exercising ordinary care in or while using it. The legal effect is inevitable that the defect was such that the plaintiff could have observed it if he had exercised ordinary care while he was using it. If he had observed or discovered the defect, he was then negligent in continuing to use it. If he did not observe it, then he was negligent in not observing it. In either case, he was not exercising ordinary care, or he was guilty of a want of ordinary care. If he had exercised ordinary care, he would not have been injured by that defect. He would have avoided it. The jury in this finding found certain facts, the legal conclusion of which is that the plaintiff was guilty of a want of ordinary care which contributed to the injury. This precludes his recovery.

We are satisfied that the jury so understood this finding. The court, after instructing the jury on the matter of the fourth finding, as relating wholly to the negligence of the defendant, instructed them in relation to the fifth finding, as follows: " In respect to the fifth question, the proof on the part of the plaintiff tends to prove that there was an appearance of a flaw in the iron, at the place where the hook broke, that should have been probably noticed by a careful observer before the iron was broken." The jury must have understood this instruction as referring to the negligence of the plaintiff in not observing the defect. All the instruction that was necessary as to the negligence of the defendant in not observing the flaw was complete and fully disposed of in the matter of the preceding or fourth question. There was no other instruction, except the above, on the subject of the plaintiff's negligence or his want of

ordinary care in not observing the defect which would pre-
clude his recovery in the action, and there was no finding
upon that subject, except in answer to the said fifth ques-
tion.   In answer to the seventh question, the jury found
"that the plaintiff, or his assistant, was not guilty of any
ordinary neglect in the use of the hook, at the time com-
plained of, that contributed to the happening of the in-
jury."   That finding was restricted to the *proper use* of the
hook by the plaintiff and his assistant, and the court so in-
structed the jury, as follows:. "If from a fair preponder-
ance of the evidence you find that, while the plaintiff and
his assistant were using the hook, they injured and weak-
ened it or broke it by their use of it, and that the final
breaking of the hook was occasioned by their abuse or
misuse of the hook, you will say 'Yes' to this question."

The testimony of the plaintiff and his witnesses, some of
which is above stated, sustained this fifth finding of the
jury of the plaintiff's negligence in not observing the flaw
or crack in the hook, or, if observing it, in using the hook
or in taking the risk.   The plaintiff assisted in changing
the staging two or three times a day.   The hooks were
taken down and put back again.   The plaintiff never ex-
amined the hooks to see whether they were all right, and
never paid any attention to them, except using them.   He
had them in his hands every day, and lifted them up'on the
beams.   His assistant, Konrad, was shown the broken hook
right away after the accident, and he looked at it casually,
or "just looked at it, at the break," as he testified.   He
did not take it in his hand or examine it.   It was a foot or
two from him when he looked at it.   He saw the flaw, and
described it, and its exact location on the outside of the
iron, where it was broken.   If a person examined it before
it was broken, the flaw would show on the outside of the
iron.   It would indicate itself, by looking at the outside of
the hook.  Daley, another witness for the plaintiff, exam-

ined the hook, but did not make a careful examination of it. He said at the time: " That iron has a flaw in it, and that hook is in bad condition where the break was." In one corner of the crook there was a crack a half inch in size. It would show on the outside. The defect was apparent and observable, and could be easily seen by any one looking at the crook, even from some distance away. It was *patent* and open to common and casual observation. The plaintiff handled the hooks two or three times a day, for three weeks, and never looked to see whether they were all right or not. The danger to the plaintiff was very great from a defective hook in such a place and use, and yet he never looked to see whether they were in good condition. Looking at them once would have saved him from his fall. The defect was obvious, and the plaintiff had the most ample means of knowing it. The law presumes that he did know it, because he ought to have known it. In such cases he is charged with knowledge. Whether he knew it or not is immaterial, if he was guilty of a want of ordinary care in not knowing it or informing himself of it.

The principles of law applicable to these facts have been recently recognized by this court, as follows: In *Wedgwood v. C. & N. W. R. Co.* 41 Wis. 478, it was held that, where the defect in the implement or machinery used is an obvious one, knowledge of it would be presumed. In *Kelly v. Abbot*, 63 Wis. 307, it was held that, where the deceased had equal or superior means of knowledge of an obvious defect in the machinery which caused his death, the company is not liable, and that its liability in such a case depends, not upon its absolute duty to furnish safe and suitable appliances, but upon its knowledge of the defect, actual or presumed. In *Ballou v. C. & N. W. R. Co.* 54 Wis. 257, the principle laid down in *Hayden v. Smithville Mfg. Co.* 29 Conn. 548, is approved, that " an employee cannot recover for an injury . . . from a defect in the machin-

ery . . . unless the employer knew or ought to have known of the defect, and the employee did not know of it *or had not equal means of knowledge;*" citing also, to the same principle, *Dorsey v. Phillips & C. Const. Co.* 42 Wis. 583; *Flanagan v. C. & N. W. R. Co.* 45 Wis. 98; *S. C.* 50 Wis. 462; *Clark v. St. P. & S. C. R. Co.* 2 Am. & Eng. R. Cas. 240; *Smith v. Potter*, 46 Mich. 258. In the same case it is held, by the authority of a great many cases from other states, which are cited approvingly, that "an employee who has knowledge of the defects in machinery about which he is employed, or who *might know them by the exercise of reasonable care*, cannot maintain an action for injuries resulting therefrom, if he continues in the employment without objection." In *Behm v. Armour*, 58 Wis. 1, it is held that the plaintiff, in such a case, ought to negative "any knowledge on his part, or *reasonable means of knowledge*," of the defect. See, also, *Naylor v. C. & N. W. R. Co.* 53 Wis. 661; *Hobbs v. Stauer*, 62 Wis. 108, and many other cases cited in the appellant's brief.

The evidence above referred to, and the above facts, most clearly bring this case within these well-established principles of law, and warranted the jury in finding that, when the hook was delivered to the plaintiff, there was a defect in it that could be observed by parties that used it, if they were exercising ordinary care in using it or taking care of it. As said before, the legal conclusion is that the plaintiff's own negligence contributed to his injury. The jury properly found the defendant negligent in not knowing the defect from inspection. But the law presumes that the defendant did know of such an obvious defect, and the company is chargeable with knowledge of it, or with negligence in not knowing it, which involves the same legal liability. And precisely so of the plaintiff, with reasonable means of knowledge of the defect, such as he most undoubtedly had.

The defendant, at the close of the plaintiff's testimony, moved the court to grant a nonsuit, which the court refused. We are asked to decide this ruling erroneous. We are inclined to think that the court ought to have granted the motion. But we will not hold it a reversible error, because the case was fully tried, and the jury reached a similar conclusion in their fifth finding of fact, although the court rendered judgment for the plaintiff. The motion of the defendant for judgment on the verdict ought to have been granted.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment for the defendant.

A motion for a rehearing was dismissed March 18, 1890.