**MISSOURI, K. & T. RY. CO. OF TEXAS v. JOHNSON.  (No. 7265.)**

(Court of Civil Appeals of Texas. Dallas. Jan. 30, 1915. Rehearing Denied March 6, 1915.)

MASTER AND SERVANT ☞286—INEXPERIENCED SERVANT — DUTY TO WARN — UNUSUAL DANGER—QUESTION FOR JURY.

Whether there was a risk of more than ordinary character, of which an inexperienced servant, directed to tighten nuts on handholds on a box car, should have been warned, *held*, under the evidence in an action for his injury from a fall when a rusty nut broke, one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

Error from District Court, Grayson County; M. H. Garnett, Judge.

Action by F. M. Johnson against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant brings error. Affirmed.

C. C. Huff, of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for plaintiff in error. Freeman & Batsell, of Sherman, for defendant in error.

TALBOT, J. The defendant in error, hereinafter called plaintiff, brought this suit against the plaintiff in error, hereinafter called defendant, to recover damages on account of personal injuries alleged to have been received by him July 11, 1913, while he was in the employ of the defendant as a car repairer. Plaintiff alleged, in substance, that he was a young man just past 21 years of age at the time he received the injuries of which he complains, and prior to June, 1913, was wholly without experience in railroad work; that in June, 1913, he entered the service of the defendant as a common laborer at its shop in the city of Denison, Tex., his work consisting mainly in getting material for other employés; that the defendant, its agents and employés, knew of his inexperience and lack of knowledge in reference to railroad work, and, so knowing, one of its foreman, named Conley, on the 10th day of July, 1913, directed plaintiff to go to defendant's yards at Ray and begin work as a car repairer under the direction of another foreman of defendant, named Jones; that on the morning of July 11, 1913, said Jones put plaintiff to work tightening nuts on handholds on a box car with a monkey wrench; that while engaged in tightening and screwing down a nut on a handhold on the top of said car, as directed by said foreman, Jones, and while standing on the third handhold from the top of said car, and retaining his position by holding to a handhold with his left hand and tightening said nut with said wrench with his right hand, said nut broke, parted, and caused plaintiff to fall backward

to the ground a distance of eight or nine feet, seriously injuring him, without fault on his part; that at the time he was directed to do said work he was wholly without experience as a car repairer, knew nothing of the duties and hazards incident to said work, and that both of said foremen of the railway company knew of his lack of knowledge and of his inexperience; that said work was unusually dangerous to one inexperienced as plaintiff was, and plaintiff, by reason of his inexperience, did not know and appreciate the risks and dangers incident thereto; that said nut which broke and caused plaintiff to fall to the ground and be injured was old, defective, worn, unsafe, and not fitted for the use and purpose for which it was designed and used, and said condition of the same rendered it dangerous and unsafe to plaintiff in doing the work he was engaged in doing at the time he fell; that by reason of the premises it became the duty of the defendant company, its said agents and foremen, to instruct and warn the plaintiff of the risks, hazards, and dangers incident to the work he was required to do, but that such duty was not performed, and, as a proximate result thereof, plaintiff was injured as alleged.

Defendant answered that it had no information as to whether plaintiff fell from a car by reason of a defective nut that he was fixing, but believed and charged the fact to be that, if plaintiff did fall, the fall was occasioned by reason of his wrench slipping in tightening a nut on the car on which he was working at the time of the accident; that it is informed and believes, and charges the fact to be, that plaintiff understood the nature of the work in which he was engaged at the time of the accident and injury, if any injury he sustained, and the dangers incident thereto. It denies that the nut with which plaintiff was working at the time of the accident was old and defective, and that its condition caused plaintiff's injury, and denies that it was guilty of negligence in permitting the nut to be in the condition it was in at the time of plaintiff's injury. It denies that there was a very great and unusual danger in the work plaintiff was engaged in or that it was its duty to warn plaintiff. Defendant further pleaded, that the injuries complained of by plaintiff, if any such were in fact sustained, were proximately caused and contributed to by plaintiff's own negligence and want of ordinary care in doing the work he was engaged in at the time of the accident, and that said injuries, if any were received, resulted from one of the risks assumed by plaintiff; that plaintiff had full notice, or by the exercise of ordinary circumspection on his part would have had full notice, of the defects and risks complained of in ample time to have avoided injury by reason thereof.

The case was tried before the court and a

174 SOUTHWESTERN REPORTER

jury March 23, 1914. At the conclusion of the evidence the defendant requested the court to give a special charge directing the jury to return a verdict in its favor. This charge was refused, and the issue of negligence on the part of the defendant in failing to warn the plaintiff, and the issues of assumed risk and contributory negligence on the part of the plaintiff were submitted to the jury. A verdict and judgment having been rendered for plaintiff, the defendant prosecuted this writ of error.

There is but one assignment of error presented. That assignment challenges the correctness of the court's action in refusing to instruct a verdict in favor of the defendant as requested by it. The propositions advanced under the assignment touching the merits of the case are:

First. "The rule requiring the master to use ordinary care to furnish the servant with safe means and appliances for the performance of his duty has no application to those things that the servant is employed to inspect and repair."

Second. "The duty to instruct and warn the servant does not rest upon the master, except where the work the servant is engaged in is attended with great and unusual danger which is known to the master and not known to the servant, and to guard against which special knowledge on the part of the servant is required."

We are of opinion there was no error in refusing the peremptory instruction. It is not claimed by any assignment of error presented in this court that the evidence showed conclusively that the plaintiff was guilty of contributory negligence, or that he assumed the risk incident to the work he was directed to do. These issues were submitted to the jury and resolved in favor of the plaintiff. The contention, in effect, is simply that it was not incumbent upon the defendant, under the undisputed facts in the case, to instruct the plaintiff in the work he was required to perform or to warn him of its attendant hazards. Therefore defendant, in failing to give such warning, had not been guilty of actionable negligence, and was not liable in damages for the injuries of which the plaintiff complains. It is well settled, we think, as contended by the plaintiff, that the duty to instruct and warn the servant rests upon the master when the work the servant is engaged in doing is attended with unusual danger, which is, or by the exercise of proper care should be, known to the master, and not known to the servant, where by reason of his inexperience the servant is actually and excusably ignorant of such danger.

The statement of facts sent to this court contains only the testimony of the plaintiff. According to his statements, as pointed out by his counsel, he was 21 years and 2 months old at the time he entered the service of the defendant. Before that he had no experience in railway service whatever. Until he was about 16 years of age he lived on a farm, and did such farm work as boys of that age usually do. After that he attended school and did a little work as driver of an express wagon in Oklahoma. He worked as a common laborer for defendant 2 or 3 weeks in the machine shops at Denison. He was then transferred to the car-repairing department in the defendant's yards at Ray. At the time he was employed as a car repairer, he told the foreman who employed him, and the one under whose direction he was working, that he had had no experience as a car repairer, and asked the foreman who was directing his work to come around pretty often to advise him. The foreman who employed him told him there would be a man to show him what to do in the car-repairing department and that he would soon "catch onto it." He had never had any experience as a carpenter. The first day of his service as a car repairer was spent in furnishing material for and waiting upon other car repairers. He had never seen any nuts on handhold bolts tightened. He testified:

"I did not know of any danger involved in that. He did not tell me anything about it. He did not give me any warning whatever or instructions. I was standing on the third step from the top 'of the box car,' holding with my left hand on top and tightening 'the nut on bolt' with my right. This nut was kind of rusty, and it took a right smart of strength to turn it. I had to pull on several of them a little hard, and this one broke. The nut on the handhold broke, and my hold gave way, and I fell kinder on my hip and side. I fell sort of backward. I struck the ground with much force. At that time I weighed 182 pounds. When this nut broke or parted, I was about 10 feet from the ground."

On cross-examination he testified:

"As to whether I knew that rusty iron in the course of time would get rotten, I don't know. I never fooled with any rotten iron, and never had any experience with any. As to whether I knew without any experience that a piece of iron laying out in the weather a long time would get rotten—wasn't as good as a piece that hadn't been used and grown rusty—I didn't know it was rotten. As to whether it wasn't as strong as a piece of iron that had not layed out and wasn't rusty, I didn't know that it made much difference. With reference to whether I thought a rotten piece of iron was just as strong as a piece not rusty, I didn't know it was eaten very deep. It would be owing to how deep it was eaten. I have never seen a rusty piece of iron that was nearly ready to fall to pieces. I knew, if I fell off that ladder, it was liable to bruise me up some. I didn't have any reason to think I would fall. I knew, if I fell, it would hurt me. I know now, if the wrench slipped on the handhold, I would fall. I knew then, if I lost my hold on that ladder, I would fall. * * * As to what complications there were about them (meaning tools), I did not have enough experience to know. * * * If I had had any experience, and would have known those taps were rusty and liable to break, or if I had been told so, I could have prevented the fall; if I had been told so; I didn't know anything about that. I didn't know it was rusty enough to pull apart. * * * As to whether I mean to say I didn't expect that to break, I didn't see why it should."

The rule applicable to inexperienced or youthful servants is laid down in 26 Cyc. page 1173, as follows:

"Where the master knows, or ought to know, the dangers of the employment, and knows, or ought to know, that the servant, by reason of his immature years or inexperience, is ignorant of, or unable to appreciate, such dangers, it is his duty to give him such instruction and warning of the dangerous character of the employment as may reasonably enable him to understand its perils. But the mere fact of the servant's minority does not charge the master with the duty to warn and instruct him, if he in fact knows and appreciates the danger of the employment; and generally it is for the jury to determine whether, under all the circumstances, it was incumbent upon the master to give the minor, at the time of his employment, or at some time previous to the injury, instructions regarding the dangers of the work, and how he could safely perform it."

That the work the plaintiff was doing when hurt was more than ordinarily dangerous, and that the defendant knew, or ought to have known, the dangers incident thereto, can hardly be denied. And that the defendant knew the plaintiff was inexperienced in said work is established by the undisputed evidence. And if the uncontroverted evidence does not conclusively show that the plaintiff, by reason of his inexperience, was ignorant of or unable to appreciate the dangers of his employment, it was sufficient to require the submission of those questions to the jury for their determination. The evidence also warrants the conclusion that the nut which broke and caused the plaintiff to fall had become rusty and weakened by decay, and that such condition was neither known to plaintiff, nor obvious to persons of ordinary intelligence. But the law is that if, through youth, inexperience, or other cause, a servant is incompetent fully to understand and appreciate the danger, although patent and obvious, it is the duty of the master to warn and instruct him fully, and, failing so to do, he is liable. 26 Cyc. 1176; Wood, Master and Servant, § 349.

The plaintiff testified, in effect, that he had no reason to believe or know that the nut he was attempting to tighten would break, although he knew that if he fell from his position on the car he would be injured, that he had never seen a nut on the bolt of a handhold tightened, did not know that there was any danger involved in such work, and that he had received no warning whatever in regard thereto. He further testified that he had had no experience with rusty or rotten iron and did not know the nut in question was rotten. As to whether he knew the nut was not as strong as one that had not been exposed to the weather, and was not rusty, he said: "I did not know it made much difference." He also stated that if he had had any experience, and had known the nut was rusty and liable to break, or if he had been informed that it was liable to break, he could have prevented the fall; that he did not "know anything about that, and did not see why it should break." So the evidence presents a case where the master directed an inexperienced servant to tighten a nut of a handhold on top of a box car some 12 or 15 feet from the ground, which the master knew, or ought to have known, had become rusty, weakened, and liable to break because of long use and exposure to the weather. He failed to inform the servant of the condition of the nut, or to warn him that it was liable to break, or otherwise suggest to him the dangers incident to the work, and, as a probable result of such failure, the servant is injured.

Such a case, we think, comes "within the principle, so often declared, that the master, engaged in a dangerous business, must not expose an inexperienced servant to the hazards of it without warning him of their existence and instruction as to the means of avoiding them." The case is therefore distinguishable from San Antonio Gas Co. v. Robertson, 93 Tex. 503, 56 S. W. 323, and not ruled thereby. Surely it cannot safely be said, as a matter of law, that the risk to which the defendant in error was exposed was of so ordinary a character as not to require some warning of the probability of the breaking of the nut.

We do not believe we would be warranted in reversing the judgment of the district court, and it is affirmed.