TEXAS & P. RY. CO. v. JONES.   (No. 1772.)

(Court of Civil Appeals of Texas. Texarkana. July 5, 1917. On Motion of Appellee for Rehearing, Oct. 24, 1917.)

1. MASTER AND SERVANT ☞112(1) — NEGLIGENCE—SAFE PLACE TO WORK.

A railroad owes to a carpenter, who fell off of a bridge because the head of a spike which he was attempting to pull broke off, no duty not to use old and secondhand spikes.

2. MASTER AND SERVANT ☞124(3) — NEGLIGENCE — DUTY TO INSPECT AND WARN OF DEFECTS.

A railroad has no duty to inspect spikes for defects as to one who fell off a bridge on account of the head coming off of a spike he was attempting to pull in repairing or constructing a bridge.

3. MASTER AND SERVANT ☞278(14)—NEGLIGENCE — DUTY TO WARN OF DEFECTS — EVIDENCE.

In an action against a railroad for injuries from a fall from a bridge by becoming overbalanced while pulling a spike, the head of which broke off, evidence *held* insufficient to warrant a finding that defendant had notice of the defect.

4. MASTER AND SERVANT ☞154(1)—DANGEROUS WORK—DUTY TO INSTRUCT.

In an action against a railroad for a fall from a bridge by reason of becoming overbalanced by the breaking off of the head of a spike which plaintiff was attempting to pull, defendant owed no duty to instruct plaintiff of the danger of such work, especially where plaintiff

had been doing such work for four months and the only thing he had no knowledge of was the defect in the spike, which the railroad was under no duty to inspect.

Appeal from District Court, Cass County; J. A. Ward, Judge.

Suit by D. Jones, Jr., against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered. Motion for rehearing overruled.

While working as a bridge carpenter for appellant, appellee fell from its bridge over the Trinity river to the bed thereof, a distance of 21 or 22 feet, and was thereby injured. On the ground that he so fell because of negligence on the part of appellant, he recovered the judgment for $5,000 against it, from which this appeal was prosecuted.

At the time he fell from the bridge, appellee was engaged in pulling iron spikes from ties into which they had been driven to hold one of the steel rails laid thereon. He was standing on the ties in a space 22 inches wide between the rail and the end of the ties, and was using a claw bar about 5 feet long to draw the spikes. One of the spikes was so defective its head broke off when he attempted to pull it, which caused him to become unbalanced and to fall as stated.

Glass, Estes, King & Burford, of Texarkana, and W. B. Figures, of Atlanta, for appellant. Hugh Carney and O'Neal & Allday, all of Atlanta, for appellee.

WILLSON, C. J. (after stating the facts as above). We think there was no testimony on which to predicate a finding that appellant failed to discharge a duty it owed to appellee, and that the trial court therefore erred when he refused to instruct the jury to find in appellant's favor.

"The negligence of the defendant," says appellee in his brief, "relied upon as a basis for recovery and as submitted to the jury in the court's charge, was as follows:

[1] "(1) In using old worn secondhand spikes in constructing and repairing said bridge prior to plaintiff's injury."

It is clear, we think, that appellant violated no duty it owed to appellee if it used such spikes for such a purpose. The bridge, for the use he was making of it, was as safe as it would have been had appellant used new and perfect spikes in constructing or repairing it. He did not fall from the bridge because of a faulty construction thereof. He fell because of a defect in the spike which made it dangerous for him to attempt to pull it as he did. It is plain that appellant in constructing the bridge did not owe to one whom it might afterwards employ to demolish or repair it a duty not to use "old worn secondhand" material.

[2, 3] "2. In knowing the faulty and dan-

gerous condition of said spikes and failing to warn plaintiff thereof."

There was testimony that the spike had been used before it was used in repairing the bridge, about four months prior to the time appellee was injured, but none other that it was defective when used in repairing same. We think that testimony did not authorize an inference that the spike was unfit for use in repairing the bridge and that appellant knew it at the time it directed appellee to pull it. If therefore appellant should have been held to have then had knowledge of the defect in the spike, it was because it was its duty to have inspected it before directing appellee to pull it. We have been referred to and have found no authority supporting the contention made that appellant owed such a duty to appellee. It would be as reasonable, it seems to us, to say that the owner of a house must inspect nails holding boards constituting the roof thereof and warn a carpenter who undertook to tear it away of defects in the nails, as to say appellant owed to appellee a duty to discover defects in the spikes before directing him to pull them. M., K. & T. Ry. Co. v. Johnson, 174 S. W. 617, cited by appellee as supporting his contention, was not like this case. Johnson was injured because the handhold furnished him for use in tightening the defective nut to the bolt which held it gave way. If appellee had fallen as he did because of a defect in the clawbar appellant furnished him for use in pulling the spike, his case would be like Johnson's. The defendant in the Johnson Case owed him the duty to use due care to see to it that the handhold was reasonably safe for the use it expected him in the discharge of his duty to make of it. It was one of the instrumentalities furnished him for use in tightening the nut to the bolt. Not so with the spike in this case. It was not an instrumentality furnished to appellee to use in tearing away the bridge, but was a thing necessary for him to remove in tearing it away. Broderick v. Railway Co., 74 Minn. 163, 77 N. W. 28.

[4] "3. In failing to warn and instruct plaintiff in the accomplishment of a dangerous piece of work, plaintiff at said time being inexperienced in such work, and defendant well knowing plaintiff's inexperience."

The work was dangerous only because it was on the bridge, off of which appellee was liable to fall. When he undertook to do the work and while he was engaged in doing it, appellee knew as much as appellant did about the danger he incurred on that account. He lacked neither age nor experience in that kind of work. He was 34 years old, and for more than four months had been working for appellant as a bridge carpenter. He testified that during that time he pulled a great many spikes, some of which were "more or less defective." The only thing connected with the work that he did not know about and appreciate the danger of was the defect in the spike. If, as we think is true, appellant, before directing him to pull it, was not bound to inspect the spike and warn him of the defect in it, appellant violated no duty it owed to him.

As we view the testimony, it did not authorize a finding that appellant was liable to appellee for damages he suffered. Therefor the judgment in his favor will be reversed, and, it appearing that the facts of the case were fully developed at the trial, judgment will be here rendered that appellee take nothing by his suit against appellant.

### On Motion of Appellee for a Rehearing.

Appellee insists that the judgment should have been affirmed, and suggests that the error, as he sees it, of this court in reversing it, was due to a misapprehension of the record, in that it appeared from the testimony, he asserts, that the spike had deteriorated 50 per cent., and that appellant knew it when it used same in repairing the bridge, four months before the time when it directed him to draw the spike. It is insisted that the failure of appellant (having such knowledge, it is asserted) to warn appellee (who was without such knowledge) of the danger to be incurred because of the defect, in attempting to draw the spike, authorized a finding of negligence on its part. There was testimony which, we think, would have authorized an inference that the spike was defective when used in repairing the bridge, but there was no testimony showing that appellant then, or afterwards before the accident occurred, knew it was defective. If, in repairing the bridge, appellant had owed to appellee a duty not to use defective spikes, it would have owed him a duty to exercise care, by inspecting or otherwise, to discover the defect in the spike in question. In such a case, a jury might have assumed that appellant discharged the duty it owed, and, if the defect was discoverable by the use of proper care, that appellant discovered it, and, having then discovered it, knew four months afterwards of the danger to be incurred in attempting to draw the spike. But, as stated in the opinion disposing of the appeal, appellant did not owe such a duty to appellee. Therefore, we think, an inference of knowledge on its part of the defect in the spike was not authorized by testimony showing merely that the spike was defective when used to repair the bridge.

The motion is overruled.