### MISSOURI PACIFIC RAILWAY AND INTERNATIONAL & GREAT NORTHERN RAILWAY v. HUGH L. WHITE.

#### No. 2631.

1.  **Master and Servant—Extra Hazardous Work.**—Where cars unusual and extra hazardous in the mode of coupling were used in carrying a circus upon a railway, it was the duty of such railway company to know of the extra hazardous condition of the cars, and to notify the employe engaged in coupling them, and thus exposed to danger in his service.

2.  **Verdict, Form of.**—A verdict as follows, "We the jury find for the plaintiff damages to the amount of $7500," is in no way defective.

APPEAL from Leon.   Tried below before Hon. Sam. R. Frost.
The opinion states the case.

*Dotson & Richardson,* for appellants. —1.   A servant is presumed to have assumed all of the risks ordinarily incident to the business or employment in which he engages; also, all other open and visible risks, whether usually incident to the business or not.   Railway v. Hester, 64 Texas, 401; Railway v. Watts, 63 Texas, 549, 552; Watson v. Railway, 58 Texas, 438;. Railway v. Callbreath, 66 Texas, 526; Wood on Mast. and Serv., p. 678,. sec. 326; Am. and Eng. Ry. Cases, 633.

2.   The court below erred in overruling appellants' motion in arrest of judgment, because the verdict of the jury was so vague and indefinite and uncertain that no valid judgment could be rendered thereon.

*Etheridge & Dashiell,* for appellee.—1.   When the master, knowing that. the servant is inexperienced, introduces into the service an appliance which.

involves extra hazard to the servant, it is the master's duty to inform the servant of such extra hazard, and his failure to do so is negligence.    Railway v. Watts, 64 Texas, 568; O'Neil v. Railway, 9 Fed. Rep., 341.

2.    The verdict is sufficient in form.    Rev. Stats., art. 1334; Rambo v. Wyatt, 32 Ala., 363; Boynton v. Phelps, 52 Ill., 210; Heinkin v. Barbrey, 40 Ga., 249.

ACKER, Presiding Judge.—Appellee brought this suit to recover damages for personal injury, which caused the permanent loss of the use of his hand, while he was employed by appellants as a brakeman on their freight trains, in which capacity he had served from the 31st day of October to the 24th day of November, 1887, when he received the injury. There was verdict and judgment for plaintiff for $7500.   It was alleged, and the plaintiff testified, that the injury was caused by the unusual and hazardous construction of the couplings of certain foreign cars composing a circus train which defendant companies received at Palestine to be transported over their road to Tyler, Texas; that he was familiar with the construction of the cars belonging to and in general use by the defendants and other companies, but had never before seen cars constructed like those composing the circus train, which were extra hazardous because of having "dead woods" or "buffer blocks" on each side of the drawheads; that these "buffer blocks" prevented the coupling being made in the usual way, and required the brakeman to hold the pin with one hand above the blocks and to guide the link with the other below the blocks in making couplings; that in attempting to make a coupling between these cars at Tyler, in obedience to an order of the conductor of the train, his hand and wrist were caught between the buffer blocks and crushed, rendering him a cripple for life; that he had had but a few weeks experience as a brakeman; that he was not informed of the peculiar construction of the circus cars, nor warned of the extra danger therefrom; that if the couplings to these cars had been such as were in use on defendants' roads he would not have been injured; that when he was ordered to make the coupling the cars were in two or three feet of each other, one moving towards the other, and he stepped in between them and attempted to make the coupling in the usual way, without knowing of the existence of the buffer blocks, which he did not notice until he received the injury.

The only proposition submitted under the first assignment of error is, "that a servant is presumed to have assumed all of the risks ordinarily incident to the business or employment in which he engages; also, all other open and visible risks, whether usually incident to the business or not."

In the case of Missouri Pacific Railway v. Callbreath, 66 Texas, 528, a case very similar in every particular to this, it was said:   "As a general principle the law is well established that one who accepts the employment of another assumes all ordinary risks incident to such employment,

and can not recover for injuries resulting therefrom. And as a general rule it is not the duty of the employer to instruct him as to the rules of the service, or warn him of the dangers incident thereto, unless information be asked. Railway v. Watts, 64 Texas, 568.

"But this rule is subject to some qualifications. It was held by this court in the case last cited that the servant being inexperienced, and ignorant of the dangers of the service upon which he was just entering, it was the duty of the company to have informed him of those dangers. The law is thus stated by a well known text writer: 'Where there are hazards incident to an occupation which the master knows, or ought to know, it is his duty to warn the servant of them fully, and failing to do so he is liable to him for any injury that he may sustain in consequence of such neglect; and this rule applies even where the danger or hazard is patent, if through youth, inexperience, or other cause, the servant is incompetent to fully understand the nature and extent of the hazard.' Wood on Mast. and Serv., 714.   *   *   *

"In the case before us it appears that the car which caused the injury was used only in connection with a patented invention, and only upon the lines of two railway companies, so far as the evidence discloses, and that the proportion of these cars to those of the usual and regular construction was not more than one in a thousand. It further appears that appellee, though of long experience as a brakeman, had never seen a car like the one in question, and never saw the peculiarity of this until the injury was inflicted. All other cars were capable of being safely coupled by the 'helper' standing between them, and this was the usual mode of making the coupling. Under these circumstances, can it be said that appellee's experience availed him in avoiding the danger in this case?

"We think, therefore, it was the duty of appellants to have informed appellee of the use of these construction cars upon their roads when he entered their service upon the yards, and of the danger of attempting to couple them in the usual way; and that their failure to do so was negligence and renders them liable for the injury."

The analogy between the case from which the foregoing lengthy quotation is made and this case is so striking that but little is left for us to say in disposing of the question presented by the first assignment of error. Callbreath was an experienced brakeman, having been engaged in that service for years on different roads, and consequently familiar with the construction of cars in ordinary and general use upon railroads, but had never seen such a car as caused his injury until at the time his injuries were received.

In this case, while White had had very little experience as a brakeman, he had become accustomed to the construction of the cars in the service of defendants, and which were in general use by railroads, and could couple and uncouple them with safety. The cars which caused his in-

jury were of peculiar, unusual, and extra hazardous construction, with which he was entirely unacquainted, never having seen such before, or noticed these until at the time of the accident, and we think the companies should have notified him of their unusual construction, and warned him of the danger therefrom. The conductor testified, it is true, that he notified the plaintiff of the unusual construction of the circus cars, and warned him to be careful, but this was contradicted by plaintiff, which made a question peculiarly within the province of the jury. It appears from the evidence that the construction of the circus cars made them extra hazardous, and it was the duty of defendants to know that they were so, and to warn the plaintiff of the increased danger he was subjected to in handling them. We therefore conclude that the first assignment of error is not well taken.

The next assignment of error presented is claimed to be on "fundamental error of law apparent on face of record," and is as follows:

"The court below erred in overruling appellants' motion in arrest of judgment, because the verdict of the jury was so vague and indefinite and uncertain that no valid judgment could be rendered thereon."

We think it a sufficient answer to this assignment to set out the verdict:

"We the jury find for the plaintiff damages to the amount of $7500.

"T. T. SHERMAN, Foreman."

Our attention has not been called to any particular in which the verdict is vague, indefinite, and uncertain, and we are unable to detect any defect or insufficiency in it.

The fifth and only other assignment of error presented is to the effect that the verdict of the jury is contrary to the evidence.

Without quoting the evidence, we deem it sufficient to say that we think the evidence previously stated in this opinion sufficient to sustain the verdict. We have read the facts carefully, and think the verdict in accord with the preponderance of the evidence.

We are of opinion that the judgment of the court below should be affirmed.

*Affirmed.*

Adopted January 28, 1890.