## Bonner and Eddy, Receivers, etc., v. R. C. Moore.

### No. 170.

**1. Master and Servant—Risks—Duty of Master.**—The general rule is, that one who accepts employment of another assumes all ordinary risks incident to such employment, and that it is not the duty of the master to instruct him as to the rules of the service, or warn him of the dangers incident thereto, unless information is asked. But the rule is qualified by exceptions. If the master know the danger incident to the employment, or ought to know it, and if the servant is ignorant, and such ignorance is known to the master, it is his duty to warn the servant and put him upon his guard against the danger. See allegations held sufficient to bring the case within the exception.

**2. Same—Care by Master—Practice.**—Action by servant for injury to his hand while attempting to couple cars, he being an employe of only seven hours, from alleged negligence on the part of the employer: *Held,* the receivers were only required to provide for their servants reasonably safe appliances and to exercise ordinary care in so doing. The petition charged that the receivers " carelessly and negligently failed to furnish a coupling knife." Such allegation, in absence of specific exception, was a sufficient allegation of negligence. although not showing the degree of negligence.

**3. Charge.**—A charge in its general propositions of law may be defective, but if in applying the principles to the facts the court supplies the defect, such defect is no ground for reversal.

**4. Rules by Employers must be Reasonable.**— The court properly instructed the jury, in leaving to them the reasonableness of a given rule imposed upon employes, and whether the rule had been made known to the employe before he was injured.

**5. Master and Servant—Care by Master.**—The court having charged upon the facts in evidence, added: "The law requires a master to furnish his servant with such reasonably safe appliances as are usually provided for the

performance of like services by persons of ordinary prudence and care," and that "this is the extent of the master's duty in this regard to his servant." *Held*, that there was no error in the refusal to give a requested charge. "that the master is not an insurer of his servant while in his employ, but is only bound to use ordinary care in providing for his safety."

6. Charge Properly Refused.— The plaintiff's case being upon the exception noted in paragraph 1 above, it was proper to refuse instructions seeking to base the duty of the master and servant upon the general rule. See examples.

APPEAL from Williamson. Tried below before Hon. W. M. KEY.

*Fisher & Townes*, for appellant.— 1. It was error to overrule said general demurrer to the first count in said petition, averring that the dangers encountered by plaintiff in coupling the cars, and which resulted in his injuries, were ordinary risks incident to the employment, and of which the nature of the service gave notice. This being so, defendants were under no obligation to warn him with regard thereto. The duty of warning extended only to latent dangers, and not to those that are obvious and of such character as to give their own best warning. Railway v. Lempe, 59 Texas, 20; Railway v. Conrad, 62 Texas, 627; Railway v. Hester, 64 Texas, 403; Railway v. Watts, 64 Texas, 570; Railway v. Callbreath, 66 Texas, 528; Railway v. Bradford, 66 Texas, 732; Railway v. Somers, 71 Texas, 700; Railway v. Hester, 72 Texas, 40; Railway v. Garrett, 73 Texas, 262; 1 Laws. on Rights, Rem. and Prac., secs. 309, 311; Railway v. McCormick, 5 Am. and Eng. Ry. Cases, 477; Bolan v. Railway, 5 Am. and Eng. Ry. Cases, 481, 505, and note; Railway v. Wagener, 21 Am. and Eng. Ry. Cases, 637; F. W. A. & S. Co. v. Gildersleeve, 33 Mich., 134; Railway v. Austin, 40 Mich., 249; Railway v. Smithson, 45 Mich., 212; Hathaway v. Railway, 51 Mich., 253; Viets v. Railway, 55 Mich., 120; Railway v. Rice, 11 S. W. Rep., 699; De Graff v. Railway, 76 N. Y., 76.

2. If at the time of accepting employment the servant knows that it is the habit of the master to furnish certain appliances to servants engaged in the business about to be undertaken, and the master informs him at that time that he can not furnish him (the servant) with such appliances, but will do so in a short while thereafter, and the servant, fully understanding that the same will not be immediately furnished, voluntarily consents to enter upon the discharge of his duty without such appliances, and is injured prior to the time when such appliances were promised to be delivered to him, he can not recover for such injury on the ground of negligence of the master in the failure to provide him with such appliances. Robinson v. Railway, 46 Texas, 550; Railway v. Doyle, 49 Texas, 191; Railway v. Drew, 59 Texas, 11; Railway v. Bradford, 66 Texas, 732; Whart. on Neg., 200, 214; Railway v. Barber, 5 Ohio St., 562.

3. The printed rule set out in the instruction is unquestionably reasonable; and if appellants' representative, at the time appellee was employed by him, read it to the appellee, and appellee was injured in the manner plead and testified to by him, there can be no controversy that such conduct on his part was in direct violation of the said rule, and the law will not permit him to recover for injuries suffered by him as the direct result of such disobedience; and the court should have given the charge requested by appellant embodying this principle. Railway v. Ryan, 69 Texas, 669; Pilkinton v. Railway, 70 Texas, 229; Wood's Mast. and Serv., sec. 419; Laws. on Rights, Rem. and Prac., sec. 315; Deer. on Neg., sec. 211; Railway v. Rice, 11 S. W. Rep., 699; Lyon v. Railway, 31 Mich., 429; Shauny v. Cotton Mills, 66 Me., 429; Railway v. Thomas, 51 Mass., 637; Railway v. Rhodes, 56 Ga., 645; Cullen v. Railway, 114 N. Y., 49; Darracutts v. Railway, 31 Am. and Eng. Ry. Cases, 157; Railway v. Whitcomb, 31 Am. and Eng. Ry. Cases, 149; Probst v. Railway, 3 So. Rep., 76, 77; Railway v. Kier, 21 Pac. Rep., 773; Cent. Q. & B. Co. v. Kitchins, 9 S. E. Rep., 828.

4. In accepting employment the appellee not only assumed the risks ordinarily incident to the particular service which he had undertaken, but he also assumed that he had the capacity to understand the nature and extent of the service and had the requisite ability to perform it; and it was error to refuse the charge setting out this principle. Railway v. Hester, 64 Texas, 401; Pilkinton v. Railway, 70 Texas, 229; Watson v. Railway, 58 Texas, 438; Railway v. Watts, 22 Am. and Eng. Ry. Cases, 480.

*J. W. Parker*, for appellee, cited: Railway v. Callbreath, 66 Texas, 528; Railway v. Watts, 64 Texas, 569; Railway v. Montier, 61 Texas, 122; Rowland v. Murphy, 66 Texas, 536; Railway v. Murphy, 46 Texas, 366; Wood on Mast. and Serv., secs. 349, 350; Patt. Ry. Acc. Law, sec. 316; Wood's Ry. Law, sec. 382; Gallagher v. Bowie, 66 Texas, 266; Hays v. Hays, 66 Texas, 610; Rost v. Railway, 76 Texas, 172; Pridham v. Weddington, 74 Texas, 357; Railway v. Ryan, 69 Texas, 669; Railway v. O'Donnell, 58 Texas, 42; Silberberg v. Pearson, 75 Texas, 290; Johnson v. Granger, 51 Texas, 45; Pilkinton v. Railway, 70 Texas, 230.

COLLARD, ASSOCIATE JUSTICE.—Suit was brought on the 17th day of May, 1890, by R. C. Moore, against the receivers of the International & Great Northern Railway Company, for $2500 damages for personal injuries received by him on the 18th day of January, 1890, in the yard of said company at Austin, Texas, while attempting to make a coupling.

Defendants filed general demurrer, pleas of not guilty, and contributory negligence, and inevitable accident.

Verdict and judgment on July 25, 1890, for plaintiff for $1000 damages, from which defendants have appealed.

Two or three years before the trial, plaintiff, who at the time of trial was twenty-three years old, was employed by the International & Great Northern Railway Company, and worked for it about six months at Taylor, Texas, in the shop, wiping engines and making fires; he went from that place to Austin, still in the employ of the company, and there worked as a fireman for four months on an engine that was used in the yard, switching and handling trains, when he left the service of the railway and worked on a farm from November, 1888, to the next November, in 1889. He returned to Austin, and was idle until on January 18, 1890, when he was employed by the defendants, receivers of the International & Great Northern Railway, as a switchman; employed by P. W. Powell, defendants' yard master at Austin, who was authorized to employ and discharge men, and went to work as a switchman on that evening, between 6 and 7 o'clock.

At the time he was last employed, plaintiff knew what the drawhead was, and that cars were coupled together with a link and pin, what these things were used for, but did not understand their use, except that the links were raised and inserted in the drawheads, and that the pins were put in to couple the cars together. He had no special knowledge of the use of the coupling apparatus, or the duties of a switchman, except the signals, which at night were given with a lantern; had seen a coupling stick, or coupling knife, and heard it was used to make a coupling without touching the link with the hand, but had never seen it used and did not know how it was used.

When he was employed, plaintiff was told that he would be furnished with a coupling outfit the next day. He had had no experience as a switchman in coupling; had never heard anything about a "stuck link," and knew nothing of "stuck links," which was a danger incident to the employment. Powell, who employed him, knew he had had no experience as a switchman, and at the time of employment did not notify or warn him of the dangers incident to such employment, or of a "stuck link." Powell knew that he had been employed as before stated as a fireman; that he had recently been on a farm, and had never served as a switchman (a part of whose duties was to couple and uncouple cars). Powell did not notify him of the dangers encountered by a switchman. Had plaintiff known what a stuck link was at the time he was hurt, he would not have attempted to raise the link. He had never seen switchmen use any coupling knife or outfit; had seen them use only their hands and a lantern at night—the lantern to signal with. He was told by Powell that his outfit would be there next day—a lantern, a switch key, and a coupling knife, ordered from San Antonio; and Powell told him to borrow a lantern to use the first night, there being an extra lantern.

The evidence is conflicting upon this point; that for defendant being that he was told the coupling outfit would be at the office for him the

evening he was employed, and that he should get it, and it was in proof that it did come, long before he was hurt that night, and he could have had it if he had made application for it as directed. But in deference to the verdict, we find that he was informed that the outfit would not be there for him until the next morning.

A link used in the ordinary coupling should move in the drawhead laterally and perpendicularly so as to have play, and so as to be raised and directed to the aperture in the drawhead of the car to be coupled, and when not coupled, to hang down from the drawhead at an angle of about 45 degrees; when it will not so move, and gets fastened by being mashed or bent out of shape by the cars, it is called a "stuck link."

At the time of his last employment, the rules as to his conduct were not read to plaintiff, nor were any instructions given him about coupling cars.

There is a conflict in the evidence, but the effect of the plaintiff's testimony is, that he had never seen rules 21, 22, or 23, or any rules about coupling cars, while he was employed in the railway service, and that he was not instructed as to the dangers of his service by Powell or any one, and did not know specially what they were.

Powell testified for the defendant, that he did instruct plaintiff at the time he was last employed as to the duties and incident dangers of his employment, in his office, on the morning before the night he went to work, and furnished him with a copy of the receivers' rules, and read to him rules 21 to 24, inclusive, as printed in the time card, a copy of which was furnished him; but Powell says he did not expressly warn plaintiff against the dangers arising from a "stuck link."

The conflict in the testimony was solved by the verdict in favor of the plaintiff, and we decide that the facts are as stated by him.

The rules mentioned are as follows:

"21. Running switches are positively prohibited.

"22. All persons are particularly cautioned against standing upright on the top of covered cars while passing through truss bridges and tunnels.

"23. Great care must be used in coupling and uncoupling cars; do not go between the cars unless they are moving at a slow and safe speed, nor attempt to make any coupling unless the drawbars and other coupling appliances are known to be in good order."

Rule 24 is in relation to boarding engines and cars in motion, and is not material to the case.

Plaintiff commenced work as a switchman between 6 and 7 p. m. on the day of his employment, in defendants' yard at Austin. He was at work in the west end of the yard. After midnight he was ordered by the yard master to make a coupling. He signalled the engineer to back up to the car; and when the moving cars were in eight or ten feet of the stationary

car he signalled the engineer to stop, and walked in between the cars to make the coupling; and when the cars were one and one-half or two feet apart, with his right hand he took hold of the link in the moving car to direct it into the drawhead; the link was stuck, and before he could let go his hand was caught between the drawheads and mashed; the thumb and forefinger of his right hand were about mashed off. His hand was on the link but a moment before it was caught, or, as he expresses it, it was caught before he realized that the link was stuck. He called another switchman to signal the engineer to move ahead, and was released.

*Opinion.*—Appellants insist, that "it was error to overrule the general demurrer to the second count in the petition, averring that the dangers encountered by plaintiff in coupling the cars, and which resulted in his injuries, were ordinary risks incident to the employment, and of which the nature of the service gave notice. This being so, defendants were under no obligation to warn him with regard thereto. The duty of warning extended only to latent dangers, and not to those that are obvious and of such character as to give their own best warning."

The count referred to in this assignment is as follows:

"2. That on, to-wit, January 18, 1890, plaintiff was in the employ of defendant receivers as a night watchman in their yards at Austin, in Travis County, in this State, Eddy Niles being the night foreman thereof, and that it was plaintiff's duty to couple cars and act in obedience to the orders of the said Niles; that on said date, in the nighttime, the night being dark, at about the hour of 1 o'clock a. m., the said foreman ordered plaintiff to make a coupling between certain cars attached to an engine and one stationary on the track in said yard; that the coupling in use on said cars was the ordinary link and pin, and was operated by having the link fastened by a pin in one of the drawheads of the cars and the switchman standing between and directing the link into the drawhead of the other car, it being designed that the link should be free in the drawhead and be capable of being moved to the right or left or up or down from a straight line on which it was supposed to work; that in obedience to said order and in the discharge of his duty, plaintiff signalled the engineer in charge of said engine to back up, and upon the end car getting within some six or eight feet of the other, which was the proper distance as he understood it, he signalled the said engineer to stop, and thereupon, in the usual way, and in the exercise of reasonable care, he stepped in between said cars and took hold of the link which was attached to the drawhead of the moving car, for the purpose of raising same so as to direct it into the drawhead of the stationary car; that for some reason unknown to the plaintiff at the time, and which he has been unable to find out up to this time, notwithstanding he has made diligent inqury, the said cars being at once removed from the said yards, the said link had

become fast in the said drawhead, and he could not raise the same to a proper level for entering the drawhead on the other car, and before he could realize the danger and withdraw his hand, the one he was using being his right hand, the said link struck against the drawhead on the other car and was pressed downward, and thereby caught his right hand and crushed his forefinger and thumb and the adjacent portions of his hand, so that the same had to be and were amputated.

"That at the time of the said accident plaintiff had been in the service of the said defendant receivers in said position as switchman about seven hours, having taken said position at the hour of 6 o'clock on the evening before, and was wholly inexperienced as a switchman and ignorant of the dangers incident to such service and of the one which caused him to be injured as aforesaid, which facts were well known to the defendant receivers and those representing their authority over plaintiff at the time he entered said service as switchman; that the said yard was not sufficiently lighted to enable plaintiff to perform his duty as such switchman with reasonable safety to himself, which fact, however, owing to his said inexperience, was not realized by him; that it was a common occurrence for links to become fastened in the drawheads of cars like the one was fastened which caused plaintiff's said injury, and that the danger arising from a link becoming fastened was one of the hazards incident to the service of switchman in the defendant receivers' employ, and to the service of plaintiff, which fact was well known to the defendant receivers, or ought to have been known to them; that notwithstanding defendant receivers and those representing their authority knew of plaintiff's inexperience as a switchman, and of the danger incident to his service as a switchman, by reason of links becoming stuck or fastened, as the one was which caused plaintiff's said injury, they and those representing them carelessly and negligently failed to warn plaintiff, at the time he entered into their said service as a switchman, or at any time thereafter, of the dangers incident to such service, or of the said danger which caused plaintiff his said hurt; on account of which, and of the said insufficient light, he was injured as aforesaid; in consequence thereof he was caused great mental and physical pain, and was wholly disabled and incapacitated for work for about five months; and that his time was well and reasonably worth $50 per month; and he was permanently disabled, to his actual damage $2500."

The law upon which this suit is founded is well settled.

The general rule is, that "one who accepts employment of another assumes all ordinary risks incident to such employment," and that "it is not the duty of the employer to instruct him as to the rules of the service or warn him of the dangers incident thereto unless information be asked." Railway v. Callbreath, 66 Texas, 528, 529; Railway v. Hester, 64 Texas, 401; Railway v. Watts, 64 Texas, 568.

But the rule is qualified by exceptions.   If the master know the danger incident to the employment, or ought to know it, and the servant does not know it, from inexperience or other cause, and the master is aware of such want of experience or knowledge, it is his duty to warn the servant, and put him upon his guard against the danger; and this is true when the defect in the appliances is obvious but the danger of its use is not known to the inexperienced servant.   Railway v. Lempe, 59 Texas, 22.

If the servant would not reasonably know, under the circumstances, that there was danger in the use of defective appliances, he would not be held to have assumed the risk.   Id., and Wood on Mast. and Serv., 714; Railway v. Wells, 16 S. W. Rep., 1025; same case on rehearing, 81 Texas, 686.

The averments of the petition in this case bring it within the exception to the general rule.   Plaintiff had only been in the service of defendants in the capacity of a switchman about seven hours; was inexperienced in that service, and ignorant of the dangers incident thereto, of which a "stuck link" was one, all of which facts were known to defendants. These facts, if true, imposed the duty upon them to warn him of the danger to be encountered by him, and their failure to do so, together with the insufficiency of the light furnished, causing the injury, created a liability for injuries resulting therefrom.

The petition is clearly sufficient as against a general demurrer.

Appellants insist that it was error to overrule the general demurrer, "as applied to the second count (paragraph 3) in plaintiff's petition, because it does not allege want of ordinary care in furnishing appliances, but of the highest care in failing to provide the safest and best, when defendants owed to plaintiff no such duty."

The count in the petition referred to is the fourth paragraph of the petition, and is as follows:

"Defendant receivers did not furnish plaintiff as such switchman with the safest and best appliances to be used by him in the performance of his duties, as was their duty to do, in this, that knowing of his said inexperience as a switchman, and of his ignorance of the appliances used in such service (and he was ignorant of the appliances used therein), they carelessly and negligently failed and omitted to furnish to him a coupling knife or coupling hook, an appliance for coupling cars, which enables the switchman to couple the same without going between the cars or putting his hands to the coupling, which was in use by the defendant receivers on their said road at the time plaintiff entered their said service as switchman.   That had defendant receivers furnished said plaintiff with said appliances, he would have used the same in coupling said cars at the time he was injured as aforesaid, and would have thereby escaped such hurt; therefore he says defendant receivers are liable to him for his damages as aforesaid."

The petition, being sufficient without the foregoing count, would not be held bad on general demurrer if it were defective in this count, as stated.

But we do not find that the count complained of requires the highest degree of care on the part of defendants in furnishing appliances. It declares that defendants did not furnish "the safest and best appliances," and that they "carelessly and negligently failed to furnish a coupling knife," etc. Nothing is said of the degree of care. Defendants were only required to provide for their servants reasonably safe appliances, and to exercise ordinary care in so doing. Railway v. Wells, 81 Texas, 686.

This is not the error pointed out If the petition demanded too much, as the safest appliances, a special exception only could have reached the error. The petition does not allege ordinary care as the extent of the duty of defendants, but it does allege that they "carelessly and negligently," etc. If a more definite allegation was necessary, it should have been demanded by special exception.

The court charged the jury as follows: "The general rule of law is, that when one person enters the service of another, he thereby assumes the risks and hazards ordinarily incident to the service undertaken. However, if the servant is inexperienced as to the service undertaken, and ignorant of the hazards incident thereto, and if such hazards and risks are not reasonably indicated by the nature of the work to be done, and if the master, knowing of such risks and hazards, and also knowing of the ignorance and inexperience of the servant, fails to warn him of such risks and hazards, and the servant is injured while performing such service, then the master is liable."

Appellants object to this charge, because it omits to state that the injury must be the result of the failure to give the necessary warning, and allows a recovery if the servant should be injured from any cause during his service.

The charge would have been more complete with the addition suggested, but we think the meaning is the same, and that it must be so understood. Otherwise it would not mean anything. In applying the principles of the charge to the facts, the court's charge was complete in this respect, and contained in distinct terms the very matter omitted in the foregoing abstract charge. This we think was sufficient, in view of the very technical inaccuracy complained of. The charge, taken with the application made of it by the court, in which application there was no omission, was the law of the case and of the facts proved.

Appellants insist, that the court erred in submitting to the jury the question of plaintiff's injury on account of failure to furnish him with a coupling stick, because there was no proper pleadings to support the charge, and the testimony did not justify it, as it was indisputably

shown that plaintiff voluntarily undertook the service without such appliance, after he had been told that it would be furnished in a short while, and because it had been brought to the yard for his use and put at a place designated where he was to get it, and he had neglected to do so.

The count in the petition herein before set out upon this branch of the case was sufficient, as before stated, as against a general demurrer and to warrant the submission of the issue.

It was in proof that the coupling outfit came to Austin after plaintiff was employed, and before he was hurt, was placed in the baggage room for him; but he says, and we find it is a fact, that he was not informed of it, and knew nothing of it until it was brought to his bed the next morning. He also testified, and we so find, that he did not know the use of it, had never seen it used, and had never seen switchmen use anything at night but a lantern. He went to work by direction of defendants' agent, voluntarily, it is true—that is, he did not refuse to work without the coupling outfit; but it does not appear that he was culpable in this. He was not advised that it was dangerous to couple cars without it.

The court submitted to the jury the question of contributory negligence, which was evidently decided by them in his favor. There is no objection to the terms of the charge submitting the question of defendants' negligence in failing to furnish the outfit. The objection is, that it should not have been submitted at all.

The assignment can not be sustained. The court instructed the jury, that if they should find that at the time plaintiff was hurt he was acting in violation of a reasonable regulation or rule made by defendants for the government of their employes, and the rule was known to plaintiff, they should find for the defendants.

Appellants assign error in the charge, because it requires the rule to be reasonable, because the reasonableness or not of the rule was left to the jury, and because the court did not define the law by which its reasonableness could be determined.

The law requires the rule to be reasonable. The charge of the court announced the law in such case, except that it was too favorable to defendants, requiring a verdict for them whether the violation contributed to the injury or not; and if it needed any additions or explanations, it was the duty of the appellants to ask them by special charges. Railway v. Ryan, 69 Texas, 669; Hocker v. Day, 80 Texas, 532; Martin Brown Co. v. Wainscott, 66 Texas, 131; The State v. Bender, 68 Texas, 676.

Appellants contend that the court erred in refusing to give their requested charge, to the effect that if the representatives of defendants read to plaintiff at the time of his employment rule 23, before set out, prescribed by them for the government of their employes, the verdict should be for defendants.

It would have been error to have given the charge, because it directed a verdict for defendants if the rule had been only *read* to plaintiff, whether he was acting in violation of it or not, and whether such violation caused the injury or not.

It is claimed that the court erred in refusing requested charge, that the master is not an insurer of his servant against injury while in his employ, but is only bound to use ordinary care in providing for his safety.

The court, in addition to the charge upon the very facts of the case, instructed the jury, that "the law requires a master to furnish his servants with such reasonably safe appliances as are usually provided for the performance of like services by persons of ordinary prudence and care," and that "this is the extent of the master's duty in this regard to his servant."

The charge refused is a correct proposition of law, but the one given is deemed sufficient as to the master's care, and is applicable to the facts of the case. There was no reversible error in refusing the charge asked.

The court refused a charge requested by defendants, stating what the plaintiff must have proven before he could recover. The requested charge is as follows, and there was no error in refusing it:

"Before the plaintiff can recover he must prove by a preponderance of testimony, first, that the coupling appliances attempted to be used by the plaintiff were defective; second, that the defendant knew of such defect, or by the use of ordinary care should have known it; third, that the plaintiff did not know of such defect, and by the use of ordinary care could not have known of it; and fourth, that the risk of injury from such defect was not an ordinary risk of the business; and if he has failed to establish any or all of these propositions by a preponderance of testimony, you will return a verdict for the defendants."

The vice in this charge is apparent. It changes the grounds of the suit as predicated upon the stuck or defective link, and the necessity on the part of defendants to warn plaintiff, he being inexperienced, as to the dangers incident to the service he had undertaken and as to the danger of a stuck link, which plaintiff alleged to be danger incident to his employment, unknown to him by reason of his inexperience. Plaintiff did not ask a recovery upon the facts as stated in the requested charge.

Appellants requested the court to instruct the jury, in effect, that "in accepting employment, the plaintiff not only assumed the risks ordinarily incident to the particular service which he had undertaken, but that he also assumed that he had the capacity to understand the nature and extent of the service, and had the requisite ability to perform it."

Error is assigned to the refusal of the court to so instruct. This charge also ignores the real cause of action declared on; it fails to recognize that the suit is founded upon an exception to the general rule stated in the charge.

Other assignments of error are in part a reiteration of those already considered, and to the denial of a new trial because of the insufficiency

of the testimony to show a liability on the part of defendants.   None of them can be sustained.

The judgment of the lower court is affirmed.

*Affirmed.*

Delivered May 10, 1893.

Justice KEY did not sit in this case.