## KENNEDY v. WHEELER. (No. 40.)*

(Court of Civil Appeals of Texas. Waco.
Dec. 11, 1924. Rehearing Denied
Jan. 22, 1925.)

**1. Master and servant ⚖️286(41)—Submission of issue of employé's mechanical knowledge held not authorized.**

In action for injury to adult employé of ordinary intelligence in replacing fan belt on pulley, evidence *held* not to show that employer knew or should have known of plaintiff's inexperience or ignorance, so as to authorize submission of issue whether he had sufficient mechanical knowledge to operate and make repairs on machine.

**2. Master and servant ⚖️153(4)—Employer not bound to inquire as to adult employé's experience, nor instruct and warn him.**

Employer is not negligent in employing one of mature years and ordinary intelligence, and need not inquire as to his experience nor instruct and warn him, unless he knows or has information of his inexperience and ignorance.

**3. Master and servant ⚖️278(20)—Evidence held to show employé knew danger of act in which injured.**

Even though employé did not know generally of dangers incident to running machine and making ordinary repairs, evidence *held* to show he knew danger of attempting very act in which injured.

**4. Master and servant ⚖️154(1)—Employer held not bound to warn employé not to repair machine in motion.**

Employer, not knowing of inexperience of ordinarily intelligent adult employé who knew danger of attempting act in manner shown and entirely safe way of accomplishing same purpose, was not bound to warn him not to make repairs on machine while in motion.

**5. Master and servant ⚖️158—Extra hazards in operating machine immaterial, where unwarned employé was injured in running engine by which propelled.**

Whether operation of carnival "ride" was so extrahazardous and highly dangerous as to require proprietor to warn employé of dangers and how to avoid them, *held* immaterial, where employé was injured while running ordinary gasoline engine, by which "ride" was propelled.

**6. Master and servant ⚖️153(4)—Adult employé presumed to have held himself out as possessing competent knowledge and sufficient skill.**

Reasonably intelligent adult, seeking employment and assuming certain duties, without informing employer of his inexperience and ignorance concerning operation and repair of machinery, will be presumed to have held himself out as possessing competent knowledge and sufficient skill to do such work.

**7. Trial ⚖️352(5)—Issue whether employer furnished reasonably safe machinery held multifarious, too general, and erroneous as not separately submitting issues raised.**

Issue whether employer furnished injured employé reasonably safe machinery to operate carnival device *held* improperly submitted, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, being multifarious and too general and not separately and distinctly submitting issues as to each alleged defect in machinery, employer's negligence in failing to discover and correct them, and proximate cause of injury.

**8. Trial ⚖️352(5)—Employer entitled to separate submission of issues as to each alleged defect in machinery.**

Under Vernon's Sayles' Ann. Civ. St. art. 1984a, defendant employer, as well as employé suing for injuries, was entitled to have existence of each alleged defect in machinery submitted separately to jury, together with issues whether such defects were results of negligence proximately causing injuries, and such explanations and definitions of legal terms as were necessary to enable jury to render proper verdict on each issue.

**9. Trial ⚖️351(5)—Court properly submitting issue need not submit it in different form at instance of either party.**

Court preparing and submitting question, so worded as to properly present issue, together with such explanations and definitions of legal terms as are reasonably necessary to enable jury to answer question, need not submit same issue in different form at instance of either party.

**10. Appeal and error ⚖️1029—Jury's findings on issues properly submitted held not to justify affirmance.**

Jury's findings on issues, distinctly and separately submitted, that gears, belt, and cogs of machine were not covered or screened, and that such was negligence and proximate cause of injury to employé, *held* not to justify affirmance, if there is any reversible error in record.

**11. Exceptions, bill of ⚖️40(1)—Trial judge's approval of bills of exceptions held order to file; after expiration of additional time granted beyond end of 8 weeks' term.**

Presiding judge's approval of bills of exceptions *held* to constitute order that they be filed and made part of record after expiration of additional time granted beyond end of trial term limited to 8 weeks; trial judge having authority to extend time in term time or vacation, without entering order on minutes, and to order filing of bills after expiration of additional time.

**12. Exceptions, bill of ⚖️40(4)—Bills of exception containing no order to file or make part of record after expiration of time granted not considered.**

Bills of exception, containing no approval nor other order to file or make part of record after expiration of additional time previously granted for filing, will be stricken and not considered.

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction March 18, 1925.

**13. Master and servant ⟝270(9)—Evidence of other accidents held inadmissible.**

In action for injuries to employé in placing belt on pulley while gasoline engine was in motion, testimony as to other accidents occurring and injuries sustained by others on carnival "ride" propelled by such engine, *held* inadmissible as not tending to show whether employer was negligent with respect to work plaintiff was doing.

**14. Appeal and error ⟝1050(2)—Admission of irrelevant evidence reversible error, unless party objecting was clearly not prejudiced.**

Admission of irrelevant evidence over objection requires reversal, unless it clearly appears that party objecting was not prejudiced.

**15. Trial ⟝352(5)—Issues held objectionable as embracing two distinct issues.**

Issues whether employé had sufficient mechanical knowledge to successfully operate and make ordinary repairs on machine, etc., *held* objectionable as embracing two distinct issues.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Action by L. O. Wheeler against Con T. Kennedy. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, 256 S. W. 315.

Spell, Naman & Penland and J. W. Cocke, all of Waco, for appellant.

Weatherby & Rogers, of Waco, for appellee.

SPIVEY, J. Appellee brought this suit against appellant for damages for the loss of his left hand and a portion of his forearm in an accident which happened to plaintiff while engaged in operating certain machinery, on or about October 13, 1922. Trial to a jury upon special issues resulted in a verdict and judgment for plaintiff. Defendant has appealed, properly presenting the matters herein discussed.

Defendant was engaged in running carnival shows, among which were "concessions," side shows, and certain machines called "rides" for the entertainment of patrons, these rides being spoken of as The Whip, Sea Plane, Ferris Wheel, and Butterfly. Each of these rides was propelled by its own gasoline engine. Defendant employed more than three persons and was not a subscriber to the Texas Employers' Insurance Association, and therefore could not defend by reason of contributory negligence or assumed risk. Vernon's Civ. Stat., art. 5246—1, 1918 Supp.

The Butterfly was a separate contrivance from the engine which propelled it, and the two were located some 20 feet apart, the power from the engine being communicated to the Butterfly by means of cogs and a shaft.

The engine was described as being operated by the explosion of gasoline in cylinders and having a fan and water cooling system, spark plugs, and valves, somewhat on the order of an automobile engine.

The power of the engine was applied to the Butterfly by means of cogwheels and a cog chain and a connecting shaft, the Butterfly being stopped or started by means of a clutch and clutch wheel in the hands of the operator at the engine. The Butterfly consisted of an upright post about 25 or 30 feet high, from the top of which arms extended, from which seats were suspended in which passengers rode. These seats moved in a circle, and also had some other motion not disclosed by the record, because the witnesses, instead of describing this motion, indicated it by gestures. The power was applied to the center post, which was caused to revolve and carry with it the baskets or seats. The operator ran the clutch and his assistants aided in loading and unloading the passengers by holding the swinging seats steady for them to embark and disembark.

The following is a description of the material portion of the gasoline engine viewed from a position in front of it; about waist high from the platform on which the operator stood there were two cogwheels and a connecting cog chain, operating horizontally, the driving cogwheel being a small one and to the right, and the driven cogwheel being larger and to the left. These two cogwheels were about 5 feet apart.

Also, on the same driving shaft of the engine was a small pulley and a belt, which connected with a larger pulley which ran the fan to cool the engine. This fan belt and its pulleys were located back of the cogs and cog chain. The upper portion of fan belt and of cog chain moved from right to left; the lower portion of each from left to right. The fan belt and cog chain ran parallel to each other, except that the fan was at a higher elevation than the cog chain, and likewise the driving pulley of the fan belt was some two or three times larger than the drive cog, so that the lower portion of the fan belt started from the under side of the fan pulley at a higher elevation than the upper portion of the cog chain, and descended at an angle of about 25 or 30 degrees and intersected the orbit of the upper portion of the cog chain about 18 or 20 inches from the right cogwheel, and intersected the orbit of the lower portion of the cog chain just before reaching the right-hand pulley and right-hand cog. In other words, about 18 inches of the lower portion of the fan belt could be seen and touched between the upper and lower portions of the cog chain; and about the same length of it could be seen and touched above the upper portion of the cog chain.

The cogwheels and chain were not guarded, screened, or covered in any way, nor

were the fan belt and pulleys. The upper portion of the fan belt was entirely above the upper portion of the cog chain. The distance between the cog chain and the fan belt was 2 or 3 or 4 or 5 inches, which is as definite as can be stated from the evidence. Photographs of the engine are in the statement of facts.

The fan belt got to running partially off toward the operator. In order to shove it back, plaintiff put the back of his fingers against the fan belt about where the fan belt could first be seen under the upper portion of the cog chain and about 18 or 20 inches from the right-hand cogwheel. He was wearing gauntlets and some projection on the edge of the fan belt caught his glove and jerked his hand to the right and downward and into and around the right-hand cog, which crushed his arm about midway between hand and elbow, making amputation necessary. The ends of the fan belt were fastened together by a metal lacing, described as being about the size of baling wire, and this lacing had broken in one place and one of the ends was sticking out beyond the edge of the belt.

There was evidence that the supports or belts holding the fan and fan pulley were fastened into metal which was too thin to hold them, so that the bolts worked loose and permitted the fan and fan pulley to drop down somewhat, and that this caused the fan belt to run off. This defect first appeared Thursday night about 9 o'clock, before the accident on Friday morning about 9 o'clock. Plaintiff continued to run until about 10 o'clock Thursday night, when they shut down, which was an hour earlier than usual, because of the fan belt running off the pulley.

On Friday morning plaintiff was endeavoring to remedy the trouble of the fan belt running off, and had the engine running, but not the Butterfly. Three or four times during Thursday night and Friday morning before the accident plaintiff had shoved the fan belt onto its pulley in the same way as when he was hurt, and nothing caught his hand or glove. The above-mentioned projection was first discovered by another person about two hours after the accident.

There was no evidence that the fan belt was worn out or out of repair prior to this time, nor any other break in the lacing of the fan belt except this one. It does not appear why plaintiff could not have applied the same pressure to the upper portion of the fan belt—the portion which was moving from right to left above the upper portion of the cog chain, as the fan belt was coming off towards him, and coming off of both pulleys—first off of one and then off the other; but he stated that the way in which he attempted to replace it was the only way, and that it was easier to put it on while the machinery was running than when not. Nor

does it appear, except by plaintiff's statement above, why he could not have reached the lower portion of the fan belt by going to the extreme right of the engine and reaching in between the cog chain and fan belt. Plaintiff testified that it could have been replaced from this position. Nor does it appear why he could not have applied the pressure to the lower portion of the fan belt which was above the cog chain.

Plaintiff's testimony disclosed some knowledge of and experience with machinery, not necessary to detail, but he stated categorically that he did not know anything about the operation of machinery. Practically all of the issues in the case were sharply contested.

The cause was submitted upon special issues, preceding which the court defined "negligence" and "proximate cause" as follows:

"By the term 'negligence,' as used herein, is meant the doing of that which an ordinarily prudent person would not have done under the same or similar circumstances; or the failure to do that which an ordinarily prudent person would have done under the same or similar circumstances.

"By the term 'proximate cause,' as used herein, is meant the act or omission which, in a continuing sequence, unbroken by any intervening agency, produced the injury complained of, and which injury ought reasonably to have been foreseen as the natural and probable result of such act or omission in the light of the attending circumstances."

[1] Under the first issue the jury found that "at the time plaintiff was put in charge of the Butterfly machine at Tyler, Tex., he did not have sufficient mechanical knowledge to enable him to successfully operate said machine and make the ordinary repairs on same." There was evidence from which the jury could have found as they did in answer to this issue. They also found, in answer to the fourteenth and fifteenth issues, that putting plaintiff in charge was negligence or the proximate cause of the injury which happened.

In connection with issue No. 1 the jury found that at the time plaintiff was so put in charge, he did not represent to defendant or to defendant's agent that he had sufficient mechanical knowledge to enable him to successfully operate said machine and make the repairs on same. The substance of plaintiff's allegations was that he was inexperienced and ignorant concerning the running and repair of machinery, and that defendant knew this fact. Plaintiff testified that he was between 32 and 33 years of age at the time of the injury, and from his manner of testifying he appears to have been a man of at least ordinary intelligence and sense. It is also shown by plaintiff's testimony that he had worked about and with this particular machine for about three weeks. During two of these weeks his prin-

cipal work was at the Butterfly proper, as distinguished from its engine, where he assisted passengers into and out of the seats of the Butterfly, and in taking down and setting up the machine as they moved from town to town weekly. About two weeks before the shows reached Tyler the foreman of the Butterfly told plaintiff that he wanted him to get used to the clutch, and during this week plaintiff would operate the clutch for a while each day until he "got mixed up" and the foreman would relieve him. During the next week he also operated the clutch daily, and it does not appear but that he ran it successfully during the time he was operating it that week. On the shows arriving at Tyler, the foreman of the Butterfly had quit. Plaintiff went out to the place where the Butterfly had been placed for erection, and, as no one came to superintend the matter of erecting it, he asked the "lot boss" if he supposed defendant wanted him, plaintiff, to put the machine up, and the "lot boss" replied, "Yes; go ahead," and that he and the other helpers about the Butterfly went to work and set it up, and did so successfully; that he did not know all about setting it up, but that what one did not know, another one did, so that they got it set up properly and successfully. This was on Monday or Tuesday and plaintiff ran the Butterfly from then until Friday morning, when he was hurt.

After plaintiff got the machine set up, defendant came around and asked how he was getting along and plaintiff replied, good as far as he knew; that defendant came around a little later and asked how everything was going, and that plaintiff replied, "Going as good as can be expected I guess. * * * He asked me if I thought I could run it, and I told him, yes, I thought I could. My exact words, when he asked me if I could run the machine,—He says, 'You think you can handle it all right?' and I says, 'Yes, I think I can get along all right with it.'" It also appears from plaintiff's testimony that he successfully ran the machine from the time he began in Tyler until he was injured; and that during the time he was at work for defendant, both before they reached Tyler and afterwards, that he would see defendant about the premises from time to time, and they would "pass the time of day." Also, while at Tyler, the clutch wore out, and plaintiff correctly diagnosed the trouble and called it to the attention of defendant, who agreed with him, and directed plaintiff to take it out and have a new shaft made. Plaintiff did this, and replaced the shaft and the machine worked all right.

The above represents what defendant knew of plaintiff's capabilities as taken from plaintiff's own testimony.

Plaintiff should have proven, as he had alleged, that defendant knew of his inexperience and ignorance, or should have proven such facts as that such knowledge could have been imputed to defendant. There is an entire absence of evidence as to this. Plaintiff being adult, and appearing to have possessed at least ordinary intelligence and sense, defendant had the right to assume that he had the requisite fitness in the absence of knowledge or information that he did not possess it.

[2] In the cases cited by plaintiff, as well as in those which we have been able to find, it is recognized that where the employé seeking employment is of mature years and possessed of ordinary intelligence, the employer is not negligent in employing him unless the employer knows or has information of his inexperience and ignorance; and under such circumstances it was not the duty of defendant to inquire as to his experience.

In the following cases it was expressly noted that defendant knew of the inexperience of the employé, and did not warn him. In some of these cases the employé was a minor. Where this inexperience exists and is known to the employer, then the duty to instruct and warn arises. Rice v. Dewberry (Tex. Civ. App.) 95 S. W. 1090; M., K. & T. Ry. v. Johnson (Tex. Civ. App.) 174 S. W. 617; G. H. & S. A. Ry. v. Hughes, 22 Tex. Civ. App. 134, 54 S. W. 264; Tex. & Pac. Ry. v. Utley, 27 Tex. Civ. App. 472, 66 S. W. 311; Receivers of I. & G. N. Ry. v. Moore, 3 Tex. Civ. App. 416, 22 S. W. 272; Mo. Pac. Ry. v. Watts, 64 Tex. 568.

[3] Also, in connection with the first issue, the court submitted, and the jury found thereunder in answer to the third issue, that the plaintiff did not know of the dangers incident to the running of said machine and making the ordinary repairs on same. It may be that the jury correctly found that plaintiff did not know, generally speaking, of the dangers incident to the running of said machine and making the ordinary repairs, but it appears that he did know the danger of attempting the very act in which he was injured.

After describing the location of the fan belt and cog chain, and their operation, and stating that they were in plain view, and how the injury happened, plaintiff testified:

"Necessarily I knew that at the time I put my hand in there to push the belt back, that if it caught my hand in there it would be a dangerous thing. I knew that if my hand got caught in these cogs it would grind it off; * * * I knew that it was a dangerous thing to stick my hand in, if anything caught my hand. I knew that when I voluntarily put my gloved hand between the upper and lower portion of the chain belt, that it was a dangerous thing to do, provided anything was wrong. It is not a dangerous place to stick a man's arm in there and put the belt on. I could see the whole thing; yes, sir; there was not anything to obscure my vision. I knew that the leather belt was out of proper condition; that it was running off the pulley."

It also appears from plaintiff's testimony that he could have gone to the right of the engine and inserted his hand in between the fan belt and cog chain, and have applied the same pressure and accomplished the same result; and from photographs in evidence, which were shown without dispute to be correct, no reason appears why he could not have applied this pressure to the upper portion of the fan belt; or to the lower portion of it which was above the cog chain.

[4] Also, in connection with the first issue, the jury found in answer to the fourth issue that defendant did not warn plaintiff not to make repairs on said machine while same was in motion. Plaintiff being an adult of at least ordinary intelligence and sense, which was known to defendant, who did not known of plaintiff's inexperience, and plaintiff knowing the danger of undertaking to do that which he attempted and in the manner heretofore shown, and knowing an entirely safe way of accomplishing the same purpose, it was not necessary nor the duty of defendant to warn him. We think therefore the finding under this issue was immaterial. Stamford Oil Mill v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111; Dallas Fair, etc., Ass'n v. Barrentine (Tex. Civ. App.) 187 S. W. 710; Van Landers v. Lumber Co. (Tex. Civ. App.) 227 S. W. 692; Reliable Steam Laundry v. Schuster (Tex. Civ. App.) 159 S. W. 447; Mo. Pac. Ry. v. Watts, 64 Tex. 568; Tucker v. Nat'l Loan Co., 35 Tex. Civ. App. 474, 80 S. W. 879; Kirby Lumber Co. v. Hardy (Tex. Civ. App.) 196 S. W. 211; Continental Coal Co. v. Gilliam (Tex. Civ. App.) 151 S. W. 890; Sesler v. Rolfe Coal Co., 51 W. Va. 318, 41 S. E. 216; Knight v. Cooper, 36 W. Va. 232, 14 S. E. 999.

[5] But the thought may arise that the operation of the machinery was extra hazardous and highly dangerous, as was charged in the petition, and that therefore it was the duty of defendant to warn and instruct. This may have been true as to the hazards connected with the operation of the Butterfly proper; but it is not necessary for us to decide that question. If it was such character of danger and hazard it may have been the duty of defendant to have warned plaintiff of the dangers attendant upon the work, and how to avoid them, as was held in the cases of Mo. Pac. Ry. v. White, 76 Tex. 102, 13 S. W. 65, 18 Am. St. Rep. 33, and Mo. Pac. Ry. v. Watts, 64 Tex. 568. But the evidence shows that plaintiff was not injured upon this machine, nor that the extra hazards, if any, connected with its operation, in any manner caused or contributed to the particular injury which happened to plaintiff. It does not appear that the Butterfly was being operated at the time of the injury, but rather that plaintiff was running the gasoline engine in an effort to make an adjustment or repair upon it; and it is not shown that the operation of such engine was attended with such character of danger or hazard, but rather that it was similar in many respects to ordinary gasoline engines in daily use throughout the country, and of ordinarily simple construction and operation.

[6] The jury also found, in answer to a special issue requested by defendant, that defendant, when he placed plaintiff in charge of the Butterfly as foreman, did not have reasonable cause to believe and did not believe, from the acts and conduct of plaintiff about said machinery, and the statements of plaintiff made or communicated to him, that plaintiff had sufficient mechanical knowledge to enable him to successfully operate said machine and make the ordinary repairs on same.

The testimony as to what defendant knew with reference to plaintiff's connection with the machine, and plaintiff's statements to him, have been set out hereinbefore; and also the fact of plaintiff's age and general intelligence, and that plaintiff did not inform defendant that he, plaintiff, was inexperienced and ignorant concerning the operation of machinery and its repair.

Under the rules of law applicable in such cases, when applied to the facts, the evidence was not sufficient to sustain this finding. The facts tend to show that plaintiff sought this employment, rather than that defendant sought him for the position. Plaintiff denied all conversation with defendant with reference to employment. The foreman of the Butterfly left defendant's employment. The circumstances under which plaintiff went to work as foreman, his connection with the running of the machine both before and after that time, what defendant knew as to his experience, plaintiff's connection with the machine, and plaintiff's statements as to his ability to run it, have already been stated.

When an employé assumes duties under such circumstances, and is an adult of reasonable intelligence, it will be presumed that he held himself out as possessing competent knowledge, and that he possesses skill enough to do the work which he has sought and accepted; and, hence, defendant had the right to assume that he had such competent skill and knowledge. Mo. Pac. Ry. v. Watts, 63 Tex. 549; G. H. & S. A. Ry. v. Hughes, 22 Tex. Civ. App. 134, 54 S. W. 264; Watson v. H. & T. C. Ry., 58 Tex. 434; Huber v. Jackson, 1 Marv. (Del.) 374, 41 A. 92.

[7] Issue No. 5 submitted to the jury was:

"Did a part of the metal lacing on the fan belt of the Butterfly catch the glove of plaintiff and jerk plaintiff's arm into the cog of the wheel, where his arm was injured?"

—which issue the jury answered in the affirmative. No questions were asked in connection with the above issue as to whether

such condition of the metal lacing constituted negligence or was the proximate cause of the injury. Defendant presented various objections to the submission of this issue not necessary to be stated, and in connection therewith requested the court to submit certain special issues prepared by him. These issues invoked a finding by the jury whether the condition of such metal lacing could have been discovered before the accident by a reasonably careful inspection of the same, whether the probability that such condition might cause injury to some one about the machinery could have been discovered before the accident .by such an inspection, and whether the defendant, had he known the actual condition of the lacing on the fan belt at the time of the injury, could have reasonably foreseen or anticipated.such injury. All these requested issues were refused. We think the issues as to whether such condition of the belt was dangerous, and whether the defendant was negligent in failing to discover and correct the same, and whether such negligence, if any, was the proximate cause of plaintiff's injury, were all intended by the court to be embraced in issues Nos. 7, 8, and 9 submitted therewith. The said issue No. 7, submitted by the court, was as follows:

"Under the facts and circumstances of this case, did defendant furnish plaintiff reasonably safe machinery with which to operate the Butterfly?"

The jury answered this issue in the negative. The jury also found in answer to the eighth and ninth issues that the failure to so furnish reasonably safe machinery was negligence and the proximate cause of the injury. Plaintiff had alleged defective machinery and defective condition thereof in several respects, to wit: (1) The unguarded cogwheels and cog chain; (2) their location too near to where the operator was required to stand or sit in operating the machinery; (3) that the fan belt was improperly located immediately behind these uncovered cogwheels and cog chain; (4) that fan pulleys and fastenings were of insufficient strength to withstand the strain on them so that they were constantly wearing out and getting out of alignment; (5) that fan belt was loose and worn out and would slip off of its pulleys; (6) and that metal lacing of fan belt was so worn that it broke, and pieces of the metal lacing projected beyond edge of fan so as to form a "trap" or hook which caught plaintiff's glove when he attempted to replace fan belt. All of the above-mentioned defects were severally alleged as constituting negligence, and that defendant knew of them, or could have known by the exercise of ordinary care, and that they were the proximate cause of the injury. There was evidence concerning each of these alleged defects, except that there was no evidence that the fan belt and pulleys and the fastenings of the latter were constantly wearing out and getting out of alignment; but there was evidence that the fan belt began to get out of alignment the night before the accident, nor was there any evidence that the fan belt was loose or worn out.

The objections to the seventh issue were that it was multifarious and too general and did not submit separately and distinctly the issues raised by the pleadings and proof. These objections should have been sustained. Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 647; T. & N. O. Ry. v. Turner, 199 S. W. 868; Southwestern Tel. & Tel. Co. v. Andrews (Tex. Civ. App.) 169 S..W. 218; Jamison Gin Co. v. Measels (Tex. Civ. App.) 207 S. W. 365; Interstate Casualty Co. v. Hogan (Tex. Civ. App.) 232 S. W. 354.

[8] The case of Fox v. Dallas Hotel Co., 111 Tex. 461, 475, 476, 240 S. W. 517, 522, contains a late enunciation by our Supreme Court of the rule to be followed in submitting special issues. The court held in that case that the statute (article 1984a) makes it the duty of the court in trials by jury, among other things, to submit all controverted fact issues made by the pleadings. We quote from the decision in that case as follows:

"Each group of facts plead by defendant in error, which, standing alone, would, if proven, constitute a complete defense to plaintiff in error's suit, presented an issue. It was the statutory right of defendant in error to have the issue presented by each complete plea submitted separately to the jury, just as plaintiff in error had the right to have submitted each issue, entitling her to recover, which she plead and proved. * * * In submitting either negligence or contributory negligence, special issues should be restricted to specific acts of negligence alleged and proven. It was no less improper, to submit the general question of * * *. contributory negligence, over objection, without regard to the specific acts of negligence plead and supported by proof, than it would have been to have submitted the general question of defendant in error's negligence, without regard to the specific acts of negligence set out in plaintiff in error's petition. So stringent was the old rule, that no special verdict was allowed to stand which did not dispose of all issues of fact. * * * No change has been made in the right of a party plaintiff or defendant to have all fact issues submitted and determined. The change is that the party who fails to make written request for the submission of an issue is treated as consenting for the court to determine the issue. * * * The right of a party plaintiff or defendant to have all fact issues submitted to, and determined by, a jury, which he has plead and proven, depends in nowise on whether judgment is to be entered on a special or general verdict. The language of the statute is too plain to admit of doubt on this point. Hence, the cases settling the rule where gen-

eral charges are given settle it where special issus are submitted."

[9] The defendant in this case had the same right as the plaintiff to have the existence of each defect in the machinery alleged by plaintiff and supported by proof, submitted separately to the jury for determination, and to also have submitted, in connection therewith, whether the existence of such defect was the result of negligence on the part of defendant, and whether such negligence was the proximate cause of plaintiff's injuries. This right was denied to defendant upon the trial of this case and the court erred in doing so. The defendant, as well as the plaintiff, not only had the right to have such issues of fact submitted distinctly and separately, and without being intermingled with each other, but he also had the right to have submitted in connection therewith such explanations and definitions of legal terms as were necessary to enable the jury to properly pass upon and render a verdict on each such issue. When a trial court in his discretion has prepared and submitted a question so worded as to properly present an issue, and has submitted therewith such explanations and definitions of legal terms as are reasonably necessary to enable the jury to properly pass upon and answer such question, he is not required to submit the same issue by a question in different form at the instance of either party. San Antonio U. & G. R. Co. v. Dawson (Tex. Civ. App.) 201 S. W. 247, 250, par. 4, and 251, par. 8 (writ refused) ; Moulton v. Deloach (Tex. Civ. App.) 253 S. W. 303, 304, 305 (writ refused); R. Piel Gin Co. v. Independent Farmers' Gin Co. of Perry (Tex. Civ. App.) 257 S. W. 630, 631, par. 4.

[10] The jury also found in answer to the tenth, eleventh, and twelfth issues "that the gears, belts, and cogs of the Butterfly machine were not covered or screened," and that this was negligence and the proximate cause of the injury. These issues were submitted "distinctly and separately and without being intermingled with each other" or with any other issue submitted, and such manner of submission was not subject to the objection just discussed. These findings, however, will not justify an affirmance of the judgment in this case if there is any error in the record requiring reversal.

[11] Appellee has filed a motion to strike out appellant's bills of exceptions because filed beyond the period of time allowed by the trial court for filing bills.

The case was tried at a term which could not by law last more than 8 weeks. The term adjourned on April 7, 1923, the last day of the term. Motion for new trial was overruled on that date, and in the order the parties were "granted 60 days in addition to the time allowed by law, after the end of this term, in which to prepare and file statement of facts and bills of exception." This 90 days expired on July 6th. Two of the bills were dated July 10th, and the remaining five on July 11th. The two bills filed July 10th concluded as follows:

"And now tenders its bill of exceptions and asks that same be signed and made a part of the record in said cause, which is accordingly done. ———— Attys. for Deft.

"Presented and agreed to.
"———— Attys. for Pltff.

"I hereby approve the foregoing bill of exceptions, with the appended addenda thereto.
"H. M. Richey, Presiding Judge."

The "appended addenda" was additional testimony relating to the subject-matter of the bill. The case having been tried at a term which could not by law last more than 8 weeks, the trial judge had the authority to extend the time in term time or vacation and without an order entered upon the minutes. On the authority of Robertson v. Lee (Tex. Com. App.) 249 S. W. 217, and for the reasons therein recited, we have reached the conclusion that the above-quoted concluding portion of said two bills of exception constituted and was an order that they be filed and made a part of the record, which order the court had authority to make after the expiration of the previously granted time.

[12] The other five bills of exception contain no such language nor any other which can be construed into an order to file or an order that they be made a part of the record; and therefore the motion of appellee to strike them is granted, and they will not be considered.

[13] In the two bills of exception which under the above ruling are considered by us, appellant objected to testimony with reference to other accidents which happened and injuries which were sustained upon the Butterfly portion of the machine, as distinguished from the engine which propelled it and which was being operated by appellee. It appears from the bills and the statement of facts that one man got his ankle hurt very badly while up on top of the Butterfly; got it pinched in between two arms of the machine up on top while it was running; that a lady got hurt by the seats or "boats of the Butterfly by reason of the starting of the machine before she had gotten out of the way after having taken a ride: that one of the seats hit her and knocked her down; and she started to get up and did not notice the seat and it knocked her down again; and that when she got up the next boat came along and knocked her down;" that another man named "Shorty" got hurt on the Butterfly; he was hooking a seat onto the rod and another rod came loose and struck him across the eye; that Mr. Craney got hurt; he was standing out near the fence and

started to come in while the machine was running, and one of the boats hit him and knocked him down; that another fellow got hurt, but not very bad; he got knocked over the fence.

It appears from the bills that the above testimony was offered for the purpose of showing that the machine was dangerous. Defendant objected to the testimony of these accidents because immaterial, irrelevant, and prejudicial, and because it appeared that these people were hurt upon a different part of the machine from that which plaintiff was operating, and it was not shown that the persons who were hurt received their injuries in substantially the same manner as the plaintiff received his and by virtue of the same appliances.

These accidents were of a different kind and were too remote in point of similarity and occurred on a different machine, and did not tend to show whether or not defendant was negligent in the instant case and with respect to the work plaintiff was doing. Hence the objections should have been sustained. M., K. & T. Ry. v. Johnson, 92 Tex. 380, 48 S. W. 568; G., C. & S. F. Ry. v. Rowland, 82 Tex. 166, 18 S. W. 96; Mo. Pac. Ry. v. Mitchell, 75 Tex. 77, 12 S. W. 810; Mo. Pac. Ry. v. Donaldson, 73 Tex. 124, 11 S. W. 163.

[14] The admission of irrelevant evidence over objection requires reversal, unless it clearly appears that the party objecting thereto has not been prejudiced thereby. Dewees v. Bluntzer, 70 Tex. 406, 408, 7 S. W. 820; Eborn v. Zimpelman, 47 Tex. 503, 522, 26 Am. Rep. 315; Baker v. Mutual Life Ins. Co., 89 Tex. 263, 264, 34 S. W. 604; Jester v. Steiner, 86 Tex. 415, 420, 25 S. W. 411; M., K. & T. Ry. Co. v. Hannig, 91 Tex. 347, 349, 43 S. W. 508.

Appellee duly filed herein his motion to dismiss the appeal, by reason of the fact that the record was not filed within the time prescribed by law, and by reason of the fact that the case was not properly transferred to this court by the Court of Civil Appeals for the Third district. The matters stated in the motion and in the reply thereto are not such as will likely arise in any other case, and it is therefore not deemed necessary to recite them. We have considered said motion, together with the facts attending the filing of the record, and are of opinion that it should be and is accordingly overruled.

[15] In view of another trial, if the evidence should call for the submission of issues Nos. 1, 2, and 3, or either of them, it is suggested that as framed at present they severally embrace two distinct issues—one as to operation of the machinery, and the other as to repairs,—and are objectionable for this reason.

For the errors discussed, the judgment is reversed and the cause remanded.